In the Matter of PAUL "X",* a Child Alleged to be Neglected, Appellant. ULSTER COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; LORRAINE "X",* Appellant.

Third Department, May 5, 1977

---

* Fictitious name.

*Karen K. Peters (Gene Reibman* of counsel), for Paul "X", appellant.

*Alan R. Sussman* for Lorraine "X", appellant.

*Richard Griggs* for respondent.

GREENBLOTT, J. Paul "X" was born on December 31, 1975 to Lorraine "X", the appellant. On February 3, 1976 a neglect petition was filed in the Ulster County Family Court by the Ulster County Department of Social Services. On March 2, 1976 the matter appeared in the Family Court at which time the appellant was granted an adjournment in contemplation of dismissal pursuant to section 1039 of the Family Court Act and a temporary order of removal was continued for 45 days while the child received surgery to correct a congenital hernia and recovered from that surgery. As a condition of the six-month adjournment, appellant was to co-operate with the appropriate departments and avail herself of mental health counseling, parental care and public health nurse instructions.

The matter reappeared on the calendar of the Family Court on July 21 and 22, 1976 after the petitioner charged that appellant failed to co-operate with the various supportive

services offered to her. After the July 21 hearing the Family Court found that appellant had failed to substantially observe the terms and conditions of the adjournment in contemplation of dismissal. Pursuant to subdivision (e) of section 1039 of the Family Court Act, the court found that circumstances of neglect were deemed to exist and proceeded to a dispositional hearing. The next day, at the dispositional hearing, the only witness was the appellant who explained that she took the child to the family doctor almost weekly because of the pressures brought on her; that the doctor's advice of feeding the baby whole milk right out of the refrigerator differed from that of the public health nurse and the homemaker aide; and that she believed that the various persons from the social service agencies unnecessarily intruded on her personal life in ways that were unrelated to child care. She stated that if she had to resume going to the mental health clinic and working with the various social service personnel she could do so, but she evidenced hostility and reluctance to co-operate. The Family Court found that there was no evidence of either neglect or abuse, malnutrition or illness. However, the court concluded "there is an underlying aura about this case that causes me an awful lot of concern". The court did not state any specific findings of the appellant's deficiencies, but noted that it would be impossible to work out the difficulties in the home because of appellant's serious lack of co-operation. The Family Court therefore placed the child in the custody of the Commissioner of Social Services for 18 months with instructions to work out a specific plan to encourage and strengthen the parental relationship which was to include adequate housing, employment, counseling, mental health care, psychiatric treatment and whatever supervisory services were needed to allow respondent to resume "her rightful place as early as circumstances will permit". Both appellant and the child, through his Law Guardian, bring this appeal, alleging that the removal of the child was unwarranted.

Section 1039 of the Family Court Act empowers the Family Court to grant an adjournment in contemplation of dismissal ("ACD") to a respondent in neglect or abuse proceedings. The ACD may only be entered upon consent of all parties and only after the court has advised the respondent of the provisions of section 1039, "particularly subdivision (e)" (Family Ct Act, § 1039, subd [a]). The adjournment may be for a period not to exceed one year (Family Ct Act, § 1039, subd [b]), upon "terms

and conditions agreeable to the parties and to the court, provided that such terms and conditions shall include a requirement that the child and the respondent be under the supervision of a child protective agency during the adjournment period" (Family Ct Act, § 1039, subd [c]). Subdivision (e) of section 1039 allows the court to restore the case to the calendar upon the application of the petitioner or the Law Guardian or upon the court's own motion, "if the court finds after a hearing that the respondent has failed substantially to observe the terms and conditions of the order or to cooperate with the supervising child protective agency. In such event, *circumstances of neglect shall be deemed to exist,* and the court may thereupon proceed to a dispositional hearing under this article and may, at the conclusion of such hearing, enter an order of disposition authorized pursuant to section one thousand fifty-two with the same force and effect as if a fact-finding hearing had been held and the child had been found to be an abused child or a neglected child" (emphasis added). The remedies for failure to comply with the terms of the ACD are the same as the remedies for failure to comply with an order of disposition made after a fact-finding hearing and adjudication of neglect (cf. Family Ct Act, § 1039, subd [e] with §§ 1071, 1072).

The advantages deemed to be gained from employment of this procedure are that an ACD provides "an alternative to the disruption of adjudicatory hearings when a family at risk is simply in need of the assistance which a child protective agency can provide" (Governor's Memorandum, approving L 1975, ch 707, quoted in NY Legis Ann, 1975, p 444), and that it avoids labeling a child neglected or abused when the parties are willing to seek help. The major disadvantage, and the basis for this appeal is that "circumstances of neglect shall be deemed to exist" without a fact-finding hearing or express admission of neglect or abuse.

Appellants argue that section 1039, particularly subdivision (e), is unconstitutional. At various stages of the proceedings culminating in the order appealed from, objections to the constitutionality of the statute were made. However, notwithstanding repeated admonitions by the Family Court, notice was never given to the Attorney-General as is required (Executive Law, § 71). We are therefore precluded from entertaining this question. We are not, however, constrained from determining whether or not there has been a denial of due

process on the facts of this case, and we therefore will proceed to a resolution of that issue.

The right of natural parents to custody of their children, and the right of children to be reared by their natural parents is of fundamental constitutional dimension. "[T]he courts and the law would, under existing constitutional principles, be powerless to supplant parents except for grievous cause or necessity (see *Stanley v Illinois,* 405 US 645, 651)" *(Matter of Bennett v Jeffreys,* 40 NY2d 543, 546). Grievous cause or necessity exists so as to justify a finding of forfeiture of parental rights and permit State intervention only "if there is first a *judicial finding* of surrender, abandonment, unfitness, persistent neglect, unfortunate or involuntary extended disruption of custody, or other equivalent but rare extraordinary circumstance which would drastically affect the welfare of the child. It is only on such a premise that the courts may then proceed to inquire into the best interest of the child and to order a custodial disposition on that ground" *(Matter of Bennett v Jeffreys, supra,* p 549; emphasis added). Thus, there is a constitutional prohibition against depriving a natural parent of the custody of a child unless (1) the best interests of the child so require, and (2) there has been an actual judicial finding of neglect or abuse.

In the case at bar, not only is there an absence of findings as to the best interests of Paul "X", but there likewise are no findings, and in fact no evidence, as we have noted, of neglect, abuse, malnutrition, illness, or the like. Moreover, while it is beyond legitimate dispute that appellant was extremely uncooperative with supporting agencies, and a finding that the terms and conditions of the ACD order were violated is fully warranted by the record, no nexus whatsoever has been established between appellant's conduct toward these agencies on the one hand, and her conduct toward, and the best interests of, her child on the other.

In this age of expanding concepts of due process and the fundamental constitutional nature of the rights we have already discussed, no argument can be made that an adjudication of neglect or abuse can be sanctioned in the absence of the full panoply of procedural protections guaranteed by the due process clause of the Fourteenth Amendment. This is not disputed as a general proposition, but petitioner argues that appellant waived the need for proof and findings of neglect and/or abuse by consenting to entry of the ACD order with

full knowledge and understanding that upon violation, circumstances of neglect would be deemed to exist pursuant to statutory mandate.

We find this argument unconvincing. An individual in appellant's position has somewhat of a Hobson's choice. Faced with an imminent judicial proceeding which may result in a loss of custody of a child, the expedient of "consenting" to an admission of neglect or abuse with no present consequences, in return for the retention of custody, becomes relatively attractive. While it is not necessary to a decision in this case to so find, we are not unmindful of the doubts which may exist as to the voluntariness of any such "consent" and "waiver".

There is, however, another reason for denying effect to appellant's "consent" in the case at bar. Appellant consented, on March 2, 1976, to what might be termed an inchoate finding of neglect. However, the order appealed from is based on events subsequent to March 2, 1976 and up to the date of the dispositional hearing. Even if it be found or assumed that appellant had admitted neglect or abuse of her child prior to March 2, 1976, we cannot see how under fundamental standards of due process and the precepts enunciated in *Bennett,* any disposition could be made without presentation of proof and the making of findings as to circumstances of the parent-child relationship up to the date of the dispositional hearing, and the best interests of the child as of that date (see *Matter of Carmen,* 37 AD2d 629, 630). Mere proof of noncompliance with conditions of the ACD order, having at best an indirect bearing on the welfare of Paul "X" does not by itself, as previously indicated, warrant a conclusion that either element of the two-pronged test under *Bennett* is satisfied, let alone both of them.

Such evidence may have greater or lesser relevance, depending upon all the circumstances of a particular case. We hold, however, that in the absence of provisions in an ACD order bearing directly upon the care, treatment and well-being of a child alleged to be neglected, proof of violation of an ACD order cannot by itself support a deprivation of custody. In conclusion, therefore, the order must be reversed and the matter should be restored to the Family Court calendar *forthwith* for further hearings at which proof of facts constituting neglect, abuse, abandonment, surrender, unfitness or the like may be presented and findings made as to appellant's

*present* capability to care for her child and the best interests of the child under *present* circumstances.

The order should be reversed, on the law and the facts, without costs, and matter remitted to Ulster County Family Court for expedited proceedings in accordance herewith.

KOREMAN, P. J., MAIN, LARKIN and HERLIHY, JJ., concur.

Order reversed, on the law and the facts, without costs, and matter remitted to Ulster County Family Court for expedited proceedings in accordance herewith.