JOHN DOE AND MARY DOE, HIS WIFE, AN ALIAS, PLAIN-
TIFFS-APPELLANTS, v. GLORIA DOWNEY, DEFEND-
ANT-RESPONDENT, AND NINA DOWNEY, RESPON-
DENT.

Argued March 8, 1977—Decided July 25, 1977.

*Mr. David J. Meeker* argued the cause for plaintiffs-appellants (*Mr. John L. Conover,* of counsel).

*Mr. William Hodes* argued the cause for defendant-respondent (*Mr. Stanley C. Van Ness,* Public Defender, attorney).

*Mr. Steven Zamrin,* Law Guardian, argued the cause for infant respondent Nina Downey (*Mr. Stanley C. Van Ness,* Public Defender, attorney).

*Ms. Lorraine Gerson,* Deputy Attorney General, argued the cause for *amicus* curiae New Jersey Division of Youth and Family Services (*Mr. William F. Hyland,* Attorney General of New Jersey, attorney).

PER CURIAM. The Juvenile and Domestic Relations Court of Union County held that defendant had abused or neglected her young child, within the intent of *N. J. S. A.* 9:6–8.21, which is a part of *L.* 1974, *c.* 119, a comprehensive enactment concerning the disposition of cases of child abuse or neglect. The court accordingly ordered the child, at that time almost three years old, placed in the custody of plaintiffs, as foster parents, for one year, under supervision of the Division of

Youth and Family Services, with the defendant mother accorded visitation one day per week. The order was reversed by the Appellate Division which concluded the trial court erred in holding that defendant had abused or neglected the child, within the proper intent of the act. We granted certification. 73 *N. J.* 52 (1977). The facts and legal issues are fully discussed in the opinion of the Appellate Division, 146 *N. J. Super.* 419, and we affirm its judgment essentially for the reasons set forth therein. We add the following comments to meet two points urged on the argument to this Court.

The Attorney General, while not expressing disagreement with the result of the judgment in the Appellate Division, which was to restore custody of the child to her mother, without visitation by the foster parents, but with continued supervision by the Division of Youth and Family Services, does differ with the interpretation by the Appellate Division of the word "education" in the statutory definition of an "abused or neglected child," *N. J. S. A.* 9:6–8.21. He seeks a clarifying expression by this Court.

So far as material in this regard, the statutory definition in the cited section covers a child whose "physical, mental or emotional condition has been impaired" or is in danger of impairment as the result of the failure of his parent "to exercise a minimum degree of care (a) in supplying the child with adequate food, clothing, shelter, *education,* medical or surgical care * * *". (emphasis added). The trial court's conclusion as to abuse or neglect was founded on the mother's alleged failure to provide adequate shelter and education. (We are affirming the Appellate Division's reversal insofar as "shelter" is concerned). In respect of "education," the court applied the comprehensive dictionary definition: "the process of nourishing or rearing a child or young person"; also, "to develop mentally and morally, especially by instruction." It concluded that the mother was "unable to provide such minimal needs for the child as would * * * allow the child to develop mentally, especially by life and growth instruction * * *", *i. e.,* "such intangibles as an adult free of

the narrow lifestyle Gloria [mother] presently finds herself to be in, can so provide a child." At the time, Gloria, a young person of very limited educational and cultural background, was unmarried and living with other people in rather cramped quarters.

In this regard the Appellate Division held: (146 *N. J. Super.* at 431):

> Equally inappropriate was the trial [court's] conclusion that N. was neglected or abused because of G.'s failure to educate or provide her with intellectual stimulation. The reference to education contained in *N. J. S. A.* 9:6–8.21(c)(4)(a) concerns parental encouragement to truancy of a school age child, or other interference with normal educative processes. It does not, and cannot, have reference to the more subtle and intangible incidents of a home environment of a preschool infant which hopefully would encourage beneficial intellectual growth; to so hold would be to sanction state intrusion into the personal relationship between parent and child to an intolerable degree and would impermissibly impair the normal prerogatives of parenthood. The enactment was never meant to provide governmental monitoring of these intimate details of the parent-child relationship.

The Attorney General contends the foregoing concept of "education" is too narrow for the purposes of this statute. He submits:

> Authorities in the area of child development and child abuse-neglect recognize that significant and long-lasting deficiencies in a child's language, intelligence, motor and emotional development are attributable to marked deprivation of those factors which cause development within normal ranges. These environmental factors, in essence, constitute education in the sense that it is the product of what is regarded as the ordinary interaction between parent and child.

He also cites references in the technical literature to such abuses of children as locking them in a closet or chained to a bed all day, malnutrition, etc. However, we agree with counsel for the mother who contends that matters such as these are amply remediable under that separate provision of the definition section which comprehends as abuse or neglect

the absence of minimum care to provide the child "with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm, or substantial risk thereof including * * * excessive corporal punishment; or by any other acts of a similarly serious nature requiring the aid of the court." *N. J. S. A.* 9:6-8.21 c(4) (b). In the context of *N. J. S. A.* 9:6-8.21 as a whole, therefore, we agree with the Appellate Division's reading of the statutory criterion of the failure of a parent to provide a child with adequate "education."

Appellants contend that the decision of the Appellate Division conflicts with our recent opinion in *Sorentino v. Family & Children's Soc. of Elizabeth,* 72 *N. J.* 127 (1976). We do not think so. In *Sorentino* the Court was confronted, by the time of its decision, with the *fait accompli* of a child which had been in the custody of prospective adopting parents, except for the first month of its life, for 31 months continuously thereafter. Apart from any other legal considerations, the *parens patriae* jurisdiction of the Court mandated a hearing to determine whether a change of custody would wreak the "serious psychological injury" to the child which the circumstances suggested to the Court. 72 *N. J.* at 131.

Here, by contrast, the child, now 4½ years of age, has been shuttled between the contending parties since it was nine months of age, with custody in one and visitation rights in the other, except during the pendency of this appeal in which the mother has exercised custody without visitation. According to the evidence, the accrued emotional harm to this child is primarily attributable to the described custodial history. The *parens patriae* authority of the Court does not call for a hearing as to potential additional harm to the child in these circumstances. The issue is strictly one as to whether the mother has abused or neglected the child, within the language and intent of the 1974 statute. We agree with the Appellate Division that she has not.

Judgment affirmed.

*For affirmance* — Chief Justice HUGHES, Justices MOUN-TAIN, SULLIVAN, PASHMAN, CLIFFORD and SCHREIBER and Judge CONFORD — 7.

*For reversal* — None.