634 P.2d 699

**STATE of New Mexico ex rel. DEPART-
MENT OF HUMAN SERVICES,
Petitioner-Appellee,**

v.

**NATURAL MOTHER,
Respondent-Appellant.**

**In the Matter of John DOE I, Jane Doe
I, Jane Doe II, and John Doe II,
Minor Children.**

**No. 5060.**

Court of Appeals of New Mexico.

Sept. 24, 1981.

Robert Crollett, Dennis Sanchez, Northern New Mexico Legal Services, Taos, for respondent-appellant.

James W. Catron, Asst. Atty. Gen., for New Mexico Human Services Dept., Santa Fe, for petitioner-appellee.

OPINION

LOPEZ, Judge.

The natural mother (mother) appeals the termination of her parental rights to her four children pursuant to § 40–7–4, N.M.S.A.1978 (Supp.1980). We reverse.

The mother and natural father (father) have four children. In 1977, HSD investigated this couple after receiving a report of possible neglect of the three older children. The mother was pregnant with the fourth child.

A doctor examined the three children and found them to be thin, possibly malnourished. He also thought that the two older children were hyperactive.

At that time, the father was unemployed and had a drinking problem, and the family was being evicted from its home. HSD provided some services to the family, among which was to help the family relocate in a trailer in which the water and plumbing were continually broken, because the pipes kept freezing. The father continued to have unemployment problems, and in February, 1979, HSD instituted proceedings to remove the children from the home. The court found during removal proceedings that there was a danger of neglect if the children remained with their parents. The two older children were placed in one foster home, and the two younger children were placed in another. The children have remained separated in different foster homes since 1979.

During the interim between February, 1979, and the termination hearing in December, 1980, the mother made substantial changes in her life to ensure the return of her children:

1) The mother obtained a divorce from the father after efforts to resolve their marital difficulties failed. Although divorce may not be seen as an ideal solution to family problems, in this case it alleviated some of the problems created by the father's drinking and chronic unemployment. Despite the divorce, the father desires that the mother retain custody of the children.

2) The mother got a job at Pizza Hut, which she had kept for over a year at the time of trial.

3) The mother moved into an adequate trailer, and acquired necessary furnishings for the children.

4) The mother worked out a future plan whereby she and the children would live with her brother and his family in Missouri. The Family Services Division of Kansas City, Missouri, upon request of HSD, did a study of the brother's home, and approved placement of the mother and children there. Other members of the mother's family also live in the same area of Missouri, and have volunteered to help the mother and children. The mother arranged with Pizza Hut to transfer her job to Missouri.

The mother entered into several agreements with HSD, the purpose of which was to lead to an eventual reunification of the parents and children. The mother substantially complied in large part with the agreements, which covered such subjects as visitation, employment, counseling and home improvements. She became more successful in meeting the terms of each successive agreement. Without regard to those efforts by the mother, HSD sought termina-

tion of parental rights without allowing the children to be returned to her.

The legislature requires that "[t]he grounds for any attempted termination must be proved by clear and convincing evidence." Section 40–7–4(J), N.M.S.A.1978 (Supp.1980). Although not explicitly required by earlier termination statutes, the New Mexico courts had already imposed this strict burden of proof in parental termination cases, because rights of fundamental importance are involved. *Huey v. Lente*, 85 N.M. 585, 514 P.2d 1081 (Ct.App. 1973) (specially concurring opinion, adopted by the New Mexico Supreme Court in *Huey v. Lente*, 85 N.M. 597, 514 P.2d 1093 (1973)); *Nevelos v. Railston*, 65 N.M. 250, 335 P.2d 573 (1959). As to the definition of "clear and convincing,"

> In *Nevelos* the Supreme Court used the phrases "clear and satisfactory something almost akin to proof beyond a reasonable doubt, or by 'clear and indubitable evidence.'" I am convinced that what the Court in *Nevelos* meant was that burden of proof which is "something stronger than a mere 'preponderance' and yet something less than 'beyond a reasonable doubt.'" (Citations omitted).

*Huey v. Lente*, 85 N.M. at 596, 514 P.2d at 1092. The record in this case does not indicate that this burden was met by the state. *See Lumpkins v. McPhee*, 59 N.M. 442, 286 P.2d 299 (1955).

HSD conceded in its answer brief that there was not substantial evidence in the record to support findings justifying termination under § 40–7–4(B)(4). The only other section applicable to this case is 40–7–4(B)(3), which states:

> The court shall terminate parental rights with respect to a minor child when the child is a neglected or abused child as defined in Section 32–1–3 N.M.S.A.1978 and the court finds that the conditions and causes of the neglect and abuse are unlikely to change in the foreseeable future despite reasonable efforts by the department or other appropriate agency to assist the parent in adjusting the conditions which render the parent unable to properly care for the child.

The findings to support termination under this section are not supported by clear and convincing evidence. The court found that the children were neglected in February, 1979, when they were originally placed in foster care. But there is no clear and convincing evidence upon which to determine that the children were neglected by the mother at the time of the hearing, or would be neglected in the future.

Most of the evidence presented to the trial court by HSD is not useful in determining whether the mother's parental rights should be terminated. HSD presented extensive testimony pertaining to the parents, children, and their homes during the period from June, 1977, to February, 1979. That evidence was useful to show conditions during that period of time. However, considering the amount of time that had elapsed until the hearing in December, 1980, and the considerable changes in the mother's circumstances, that evidence was stale for the purpose of determining whether those conditions persisted at the time of the hearing or would persist into the future.

HSD also brought in testimony about the existing and past foster homes of the four children since 1979. That evidence was irrelevant in determining whether the mother's parental rights should have been terminated. We reiterate that the process of making a determination of termination of parental rights under § 40–7–4 does not include a comparison of the relative merits of the environments provided by the foster parents and by the natural parents. *Huey v. Lente*, 85 N.M. at 595, 514 P.2d at 1091. The only consideration is whether the environment provided for the children by the parents, in this case the mother, is and will be adequate under the statute.

Other evidence presented by HSD pertinent to the mother's case consisted of testimony by social workers and a psychologist to the effect that they did not think the mother had changed in terms of her parenting abilities. In 1979, the psychologist decided that the mother suffered from "im-

mature personality disorder." At trial, some of the bases for the witness' opinion that the mother had not changed since 1979 were that 80% of people with a disorder such as "immature personality" do not change, and that the mother still lacked "common sense" because she confided in the psychologist a month before the termination hearing, knowing that the hearing was upcoming. This latter reason provides an interesting comparison with the testimony from the social workers that the mother had not changed because she refused to open up or confide in them or in counselors recommended by them. That evidence is conflicting and speculative; it is not the kind of proof necessary for termination of parental rights.

■ The trial court made the following findings pertaining to the requirements for termination under § 40–7–4(B)(3), N.M.S.A. 1978 (Supp.1980):

7. The petitioner [HSD] provided counseling services of various kinds to the respondent-parents in continuing efforts to have them acquire adequate parenting skills, and although [the mother] substantially complied with the attendance, and [the father] did not, there is no demonstrable improvement in their ability to provide adequate home care for the children.

9. The natural parents suffer from a mental disorder classified as an "inadequate personality syndrome" which keep them from learning adequate parenting skills.

11. At the time of removal, the children were neglected as provided by § 32–1–3, N.M.S.A.1978 and the conditions of neglect are unlikely to change in the foreseeable future despite more than reasonable efforts by the petitioner to assist the parent in adjusting the conditions which render the parent able to properly care for the child.

For the reasons discussed above, we hold that the record does not provide clear and convincing evidence to support those findings.

The trial court's findings relating to the mother's plan to move to Missouri with the children are:

8. The respondents are now divorced, and [the father] wishes custody of the children to go to [the mother]. [The mother] is now working steadily and wishes to go to Missouri with the children where she could reside with relatives; [the father] works only occasionally and has no declared future plans. The present condition of the children is such that [the mother's] wishes are not realistic.

10. The children continue to be hyperactive and although all have improved substantially since separation from the natural parents, each requires continued individual attention which cannot be provided by the natural parents or by [the mother's] extended family.

The homestudy of the brother's home in Missouri resulted in a very favorable report which recommended it as a suitable placement for the mother and children. HSD disregarded the recommendation and went ahead with termination proceedings. Two social workers testified that they did not approve of the brother's home as a suitable environment for the children, principally because both the brother and his wife had been previously married; because the mother had not been in close contact with her relatives in Missouri for the past five years, and because they did not know whether the relatives could provide for the special needs of the children. This testimony does not provide clear and convincing evidence that the children would not be provided adequate, or even excellent care in Missouri, and it totally disregards the information and recommendations it commissioned the Missouri officials to make.

HSD failed to comply with the statute in another respect. The termination statute requires that HSD make "reasonable efforts * * * to assist the parent in adjusting the conditions which render that parent unable to properly care for the child. * * * " HSD did not make a reasonable effort to assist the mother in finding a situation suitable for her and her children. To the con-

trary, by rejecting the realities of the mother's efforts and the favorable homestudy, it appears that HSD was bent upon thwarting the mother in her efforts to adjust conditions so that she would properly care for her children. We must conclude that HSD acted in bad faith by requesting the homestudy when it is obvious that HSD had no intention of following its recommendations.

In summary, the mother arranged for a good environment in Missouri in which to raise her children; she received the promise of help in Missouri from several members of her family; she found employment which is ongoing in order to provide for herself and her children; she demonstrated a sustained interest in having her children with her.

The statute requires that "the court shall give primary consideration to the physical, mental and emotional welfare and needs of the child." Undoubtedly, the trial court made every effort to comply with this proviso. But this cannot be done to the utter exclusion of consideration of the rights of a parent to raise her children. This proviso cannot be read to mean that the children are entitled to a "better" environment than that provided by the mother, if the one provided by the mother is acceptable to society. *Huey v. Lente*, 85 N.M. at 597, 514 P.2d at 1093. In this case, the mother has made efforts to provide an acceptable environment for the children. She has not been afforded the opportunity to demonstrate what kind of a parent she would be today. *See Hyatt v. Hyatt*, 24 Ariz.App. 170, 536 P.2d 1062 (1975).

Because we reverse on the failure of HSD to meet the statutory requirements for parental termination, we do not reach the other issues raised by the mother. The judgment of the trial court is reversed, and this case is remanded to the trial court with instructions that it enter judgment returning custody of the children to the mother on the condition that she and the children move to Missouri to live with her brother.

HENDLEY and WALTERS, JJ., concur.