778 P.2d 449

**In the Matter of MARY L., Donna L. and Michael L., minor children.**

**No. 10701.**

Court of Appeals of New Mexico.

June 23, 1989.

Certiorari Denied Aug. 18, 1989.

M. Elizabeth Price, Human Services Dept., Clovis, Jean Larman, Human Services Dept., Santa Fe, for petitioner-appellee Human Services Dept.

Warren F. Frost, Rowley & Parker, P.C., Clovis, for respondent-appellant Natural Mother.

Randy Knudson, Doerr & Knudson, P.A., Portales, for respondent-appellant Natural Father.

James F. McDowell, III, Tatum & McDowell, Clovis, guardian ad litem.

## OPINION

BIVINS, Chief Judge.

Mother appeals the order of the district court of Curry County adjudicating her three children neglected, giving legal and physical custody of the children to the Human Services Department (Department), and requiring her to abide by the provisions of a treatment plan. We discuss (1) whether mother was entitled to custody of the children in January 1985; (2) whether mother neglected the children within the meaning of NMSA 1978, Section 32-1-3(L)(2) (Cum.Supp.1988) of the Children's Code, NMSA 1978, Sections 32-1-1 to 32-1-59 (Repl.1986 & Cum.Supp.1988); and (3) abandonment to the extent it may have been considered by the trial court. We reverse.

The dispositive facts are not in dispute. The three children who are the subjects of this action are mother's natural children, all born or conceived during her marriage with father. During the relationship, which was marred by father's continuing physical abuse of mother, she left him several times. In 1977, she left him for the last time, and thereafter saw relatively little of the children, in part because father threatened to kill her should she attempt to contact the children, and in part because father was a migrant worker who took the children with him on his travels. After mother left in 1977, father obtained a di-

vorce in Texas, which awarded him custody of the children.

On December 25, 1985, father, the children, and several of father's relatives were in Clovis, New Mexico. A fight broke out between father and his two brothers, the police were called, and father was taken into custody. At this point, the oldest daughter, who was twelve at the time, confided in one of her aunts that father had been sexually abusing her for the last four years. The authorities investigated these allegations, and the Department took the children into custody under an ex parte custody order issued December 27, 1985. On December 30, 1985, the Department filed a petition alleging father had abused all three children, and asking the court to adjudicate the children abused and give their legal and physical custody to the Department. This abuse petition was resolved by a consent decree entered into by father, the Department, and a guardian ad litem on January 15, 1986, in which father agreed to give the Department custody of the children. Mother never received notice of this action, was not joined as a party, and did not participate in this action. In 1986, father was convicted of sexual abuse and sentenced to nineteen and one-half years in prison. He is still incarcerated.

On December 30, 1985, a caseworker from the Department contacted mother. At that time and throughout these proceedings mother was living in a small town in the Dallas/Fort Worth area. Mother asked to have custody of the children, and was informed that the Department could not give her custody unless and until the Texas counterpart of the Department performed a favorable home study on mother. The Department did, however, allow mother to talk to the children, and mother visited them in person approximately two weeks later. Thus, in January 1986, it was clear mother wanted custody of the children, and that the Department would not allow her to have the children unless and until a favorable home study was obtained from Texas.

In October 1986, the Department received a home study from Texas. The Department determined the home study was negative, and informed mother that she would need to cure certain deficiencies identified in the home study. The Department developed a service plan consisting of a psychological evaluation, individual counseling, parenting classes, and a program of regular scheduled contact with the children by mail, by telephone, and in person. Mother did not fully comply with the terms of the service plan. A second service plan was developed; mother did not fully comply with the terms of this service plan either.

In January 1988, the Department filed a neglect and abuse action against both mother and father, and obtained another temporary custody order giving the Department custody of all three children. As to mother, the petition alleged only neglect, not abuse. The affidavit in support of the petition alleged the facts concerning mother's various failures to comply with Department's service plans.

Independent counsel for mother was appointed in February 1988. Counsel moved to dismiss the neglect action on the ground that mother's constitutional right to custody of her children had been violated, and the only evidence of any neglect was evidence pertaining to mother's actions while the Department wrongfully had custody of the children. The trial court denied the motion. A combined adjudicatory and dispositional hearing was held March 29, 1988. After hearing evidence, the trial court found and concluded that the children were neglected by both mother and father, and ordered that the Department should retain legal and physical custody of the children. Mother appeals the order; father has not appealed.

### 1. Mother Was Entitled to the Custody of the Children in January 1986

Mother argues on appeal that her right to raise her children is a liberty interest protected by the due process clause of the fourteenth amendment to the United States Constitution. See *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *State ex*

*rel. Dep't of Human Servs. v. Perlman,* 96 N.M. 779, 635 P.2d 588 (Ct.App.1981). Mother further argues that the state may not deprive her of custody of the children without providing her with due process, which, in the context of this case, would include notice of the charges of alleged unfitness and an opportunity to be heard on those charges in a judicial forum. *See Stanley v. Illinois; Duchesne v. Sugarman,* 566 F.2d 817 (2d Cir.1977); *In re Paul X.,* 57 A.D.2d 216, 393 N.Y.S.2d 1005 (1977).

The Department argues, without citation of authority, that mother was deprived of her right to raise her children not by the Department, but by the Texas divorce decree that gave custody of the children to father; that once the children were removed from father's custody, the Texas divorce decree prohibited the Department from giving mother custody of the children; and that noncustodial parents are not entitled to the same constitutional rights as custodial parents. We disagree with the first two contentions; the third contention is resolved by the law of this state, and thus we do not need to reach the constitutional issue. "Courts will not decide constitutional questions unless necessary to a disposition of the case." *Huey v. Lente,* 85 N.M. 597, 598, 514 P.2d 1093, 1094 (1973).

▉ The Department made no attempt to plead or prove Texas law with respect to the effect of custody determinations in a divorce action, *see* SCRA 1986, 1–044(B), and thus we resolve this issue under our own law. Under New Mexico law, the placement of a child in the custody of one parent as opposed to the other in a divorce action does not extinguish the noncustodial parent's right to custody, nor does it constitute an adverse determination of the fitness of the noncustodial parent. *Roberts v. Staples,* 79 N.M. 298, 442 P.2d 788 (1968). A custody decree in a divorce action only determines custody as between the parents. Thus, the Texas divorce decree relied on here merely determined that father, not mother, was entitled to custody.

This state has long recognized two types of custody disputes: those between parents and those between parents and a third party. *See, e.g., Shorty v. Scott,* 87 N.M. 490, 535 P.2d 1341 (1975); *Roberts v. Staples.* In a dispute between the natural parent and third parties concerning the custody of a child, the natural parent is entitled to custody of the child unless the third party makes an affirmative showing that the parent is unfit. *Shorty v. Scott; Roberts v. Staples; Greene v. French,* 97 N.M. 493, 641 P.2d 524 (Ct.App.1982); *see also Stanley v. Illinois.* In a judicial proceeding, this entitlement is reflected in a presumption of fitness, based on the assumption that it is in the child's best interest to be with the parent. *Shorty v. Scott; Greene v. French.*

▉ The parties appear to agree in this case that the Department's initial taking of custody of the children on December 27, 1985 was lawful, and we assume that it was. Nevertheless, once mother was notified and indicated a desire to have custody of the children, the Department was required to either relinquish custody to her or file a legal action to establish its right to custody as against mother. Where the custodial parent has neglected the child, the noncustodial parent is not merely a placement alternative; instead, the noncustodial parent is entitled to custody unless the Department can establish the noncustodial parent is unfit. *Miske v. Department of Children & Family Servs.,* 110 Ill.App.3d 278, 66 Ill.Dec. 1, 442 N.E.2d 273 (1982).

▉ In support of its contention that it was not required to turn over custody of the children to mother, the Department argues that it has a responsibility to investigate even natural parents prior to returning custody of children to them. The Department relies on *Estate of Bailey by Oare v. County of York,* 768 F.2d 503 (3d Cir.1985), *overruled on other grounds, DeShaney v. Winnebago County Dep't of Social Servs.,* — U.S. —, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). That case, however, is inapposite, involving as it does a situation in which the social services agency in question had received and confirmed reports that the natural parent had physically abused the child. In this case, the

Department had no information indicating mother had ever abused these children, nor was any such information uncovered at any time during the course of these proceedings.

■ The Department further argues that a home study was necessary in order to place the children with their mother because she lives in another state. In support of this argument, the Department cites the Interstate Compact on Placement of Children, NMSA 1978, § 32–4–1 (Repl. 1986) (Compact). The Department's argument concerning the Compact proceeds from the incorrect assumption that the Department properly had custody of the children, and placement with their mother was a foster placement. Had the Department given custody to mother in January 1986, rather than renewing its custody orders for the children, nothing in the Compact would have prevented mother from taking the children back to Texas with her. Article 8 of the Compact expressly exempts from the placement requirements relinquishment of children to a natural parent in another state.

The parties have also engaged in some argument concerning whether mother's rights to due process of law prior to being deprived of the custody of her children are adequately protected by the provisions of the Children's Code and the procedural rules adopted by our supreme court to implement them. We note that on this record this constitutional issue is not presented for review because in fact those procedures were not followed. Therefore, we do not address this issue. *See Huey v. Lente.*

In short, we agree with mother's contention that, under the law, the Department was required either to turn over the custody of the children to her in January 1986, or to secure a judicial determination, after proper notice to her, that mother was not entitled to custody of the children.

2. *The Trial Court's Decision that Mother Neglected the Children Is Not Supported by Substantial Evidence*

Mother argues that the Department's only evidence against her of neglect was obtained during the period it illegally retained custody of her children. She claims the evidence was based solely upon her failure to comply with the treatment plan which the Department imposed upon her in violation of her due process and equal protection rights to custody of her children. She analogizes this situation to that of a person subjected to an unconstitutional search and seizure, and urges us to fashion an exclusionary rule similar to that applying to unconstitutional searches and seizures. *See Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). In support of her argument, mother relies on this court's decision in *Perlman,* in which we held that a judgment terminating parental rights could not be sustained where the judgment rested on a prior adjudication of neglect that was void because mother had been denied her right to counsel.

■ We need not adopt such a sweeping constitutional rule in this case. *See Huey v. Lente.* Rather, we hold that the trial court's findings and conclusions on neglect are not supported by clear and convincing evidence as required by Section 32–1–31(F) of the Children's Code.

■ The Department's petition for abuse and neglect alleged mother neglected the children based only on her failure to comply with the treatment plan. To the extent the trial court relied on mother's failure to fully comply with the treatment plan as evidence of neglect, we note mother is not required to accept the Department's advice absent a court order requiring her to do so. *See* § 32–1–34(C) (treatment plan may be imposed by court once determination of neglect or abuse has been made); *Doe v. G.D.,* 146 N.J.Super. 419, 370 A.2d 27 (App. Div.1976), *aff'd sub nom. Doe v. Downey,* 74 N.J. 196, 377 A.2d 626 (1977). Consequently, the trial court could not use mother's failure to comply with this plan as evidence of neglect. Since this was the only evidence of neglect the Department presented, the trial court's judgment is not supported by clear and convincing evidence.

### 3. *Abandonment*

Among the findings adopted by the trial court are several findings challenged by mother to the extent they purport to find mother abandoned the children from 1977, when she left father, to December 1985. We note that abandonment is a separate ground for declaring a child to be neglected. § 32–1–3(L)(1). The Department did not allege this ground in its petition. Additionally, the conclusions of law requested by the Department and adopted by the trial court do not purport to conclude that the children were abandoned by mother; instead they find the children to be neglected under Section 32–1–3(L)(2).

■ It may be that the trial court believed mother abandoned the children while they were in the custody of father. However, we do not need to decide the difficult issue of whether, under the circumstances presented here, mother legally abandoned the children during that time because, even if this were the case, it would not be sufficient to support the neglect determination.

In determining matters of custody as between a parent and a third party, this court has previously held that trial court determinations must be based on current evidence. *State ex rel. Dep't of Human Servs. v. Natural Mother*, 96 N.M. 677, 634 P.2d 699 (Ct.App.1981). The neglect petition was not filed until January 1988. At that time, any evidence of abandonment prior to December 1985 would not have been current and could not have been used against mother.

### CONCLUSION

The order of the trial court declaring these children to be neglected, granting the Department legal and physical custody, and ordering mother to comply with a treatment plan is reversed. The Department is ordered to return the children to their mother.

IT IS SO ORDERED.

ALARID, J., concurs.

DONNELLY, J., specially concurring.

DONNELLY, Judge (specially concurring).

I concur in the result reached by the majority, however, on other grounds.

Evidence contained in the record indicates that the mother separated from her former husband in 1977 and left her three children in the care and custody of the children's father. Thereafter, the father obtained a divorce in Texas from the mother. Under the divorce decree the father was awarded custody of the three minor children. On December 30, 1985, the Department of Human Services (Department), following a report by one of the children that the child had been sexually abused by the father, conducted an investigation and obtained an order in Cause No. 3243, Curry County Children's Court, removing the children from the custody of the father and placing custody of the children in the Department.

Thereafter, the father agreed to the entry of a consent degree placing custody of the children in the Department. The father was prosecuted and convicted of criminal charges of sexually abusing the children, and was subsequently sentenced to prison. The mother resided in Texas and was not joined in the original action filed against the father.

On January 6, 1988, two years after the Department initially obtained custody of the children, the Department filed a petition in Cause No. 3638, Curry County Children's Court, against both the father and mother alleging that (1) the father had physically, emotionally and sexually abused his children, and (2) that the mother had neglected the minor children. Thereafter both Cause No. 3243 and 3638 were consolidated on the motion of the Department.

The trial court appointed a guardian ad litem to represent the children and following a trial on the merits in March 1988, the children's court adopted findings of fact and conclusions of law determining, among other things, that the natural mother had neglected her three minor children and entered an adjudicatory and dispositional order on June 21, 1988 directing that the children remain in the legal and physical

custody of the Department for a period not to exceed two years, and that the order of custody be subject to periodic review.

The petition filed by the Department against the mother in January 1988, failed to comply with SCRA 1986, 10–303 and 10–305. Children's Court Rule 10–303(A) provides in part:

Time limits. If the child alleged to be abused or neglected is in the custody of the department or the department has petitioned the court for temporary custody, a custody hearing shall be held within ten (10) days from the date the petition is filed to determine if the child should remain or be placed in the custody of the department pending adjudication.

Rule 10–305(C), further specifies that:

Time limits. Petitions shall be filed:

(1) within ninety (90) days from the date the complaint is referred to the department if the child is not in the custody of the department; or

(2) within two (2) days from the date that the child alleged to be abused or neglected is taken into custody.

If a petition is not filed within the time set forth in this paragraph, *the child shall be released to his parents, guardian or custodian.* [Emphasis added.]

NMSA 1978, Section 32–1–38(D) (Repl. 1986), provides also in part that:

If the child is an adjudicated abused child, the abused child shall not be returned to the respondent parent * * * without a hearing by the court to determine that the conditions in the home leading to abuse have been corrected and that it is now safe for the return of the abused child. An adjudicated abused child shall not be returned to the respondent parent, guardian or custodian on the sole basis that the custody orders have expired. During the effective period of the custody order, the children's court attorney shall promptly schedule a hearing to determine whether the abused child may be safely returned to his parent, guardian or custodian or whether custody orders shall be extended for the child's protection.

The mother was never joined in the original custody action filed against the father and the petition alleging neglect filed by the Department against the mother does not allege any improper conduct by the mother prior to the time the Department received custody of the children. The motion to consolidate filed by the Department alleged that the mother had neglected the children after Cause No. 3243 was filed and at a time following removal of the children from the father's custody. The Department has not alleged that the mother at any time abused the children.

Promptly after the Department took custody of the children the mother made a demand that the children be relinquished to her; the demand was refused. The Department's allegations of neglect against the mother were largely premised on the mother's alleged failure to comply with a service plan imposed upon her after the mother had requested that the children be placed in her custody. Under the circumstances herein, the mother was entitled to custody of the children in 1986, and she was not legally obligated to comply with the terms of a service plan promulgated by the Department and which had not been approved or ordered by the court. *Compare* NMSA 1978, § 32–1–34(C) (Repl.1986). Under Rule 10–305(C), the Department was required to deliver custody of the children to the mother, or to file a timely petition against her alleging grounds indicating that the children should not be placed in her custody, within the time required by the rule. Rule 10–305(C) requires that the custodial rights of parents be promptly adjudicated. The Department's failure to comply with the time limits imposed by Rule 10–305(C) required that the provisions of Rule 10–305(C) be implemented and that the children be released to the mother.

Although the provisions of Rule 10–305(C) are dispositive of the mother's right to custody of the children, the dispositional judgment of the children's court placing custody of the children in the Department was also deficient because it failed to comply with the provisions of Section 32–1–34(A). The latter section provides that where a child is found to be neglected or

abused, the trial court *shall* adopt findings of fact incident to its dispositional judgment determining:

(1) the interaction and interrelationship of the child with his parent, his siblings and any other person who may significantly affect the child's best interest;

(2) the child's adjustment to his home, school and community;

(3) the mental and physical health of the individuals involved;

(4) the wishes of the child as to his custodian;

(5) the wishes of the child's parent or parents as to the child's custody.

(6) whether there exists a relative of the child or other individual who, after study by the * * * department, is found to be qualified to receive and care for the child;

(7) the availability of services recommended in the treatment plan * * *.

(8) the ability of the parents to care for the child in the home so that no harm will result to the child; and

(9) whether reasonable efforts were utilized by the * * * department to prevent removal of the child from the home prior to placement in substitute care and whether reasonable efforts were utilized to attempt reunification of the child with the natural parents.

The findings adopted by the trial court were thus not sufficient to permit meaningful review.

I join in the result reached by the majority determining that the judgment entered below was in error and that the children should be ordered to be returned to the mother.