801 So.2d 1047 (2001)
STATE of Florida, DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Petitioner,
v.
L.G. and L.G., parents of M.G., a child, Respondents.
No. 1D01-1984.
District Court of Appeal of Florida, First District.
December 26, 2001.
*1048 Lori Lee Fehr, Assistant District Legal Counsel, Pensacola, for Petitioner.
John Jay Gontarek of John Jay Gontarek, P.A., Ft. Walton Beach, Attorney for Respondent, Father. Michael A. Flowers, Esquire of Jones and Flowers, Niceville, Attorney for Respondent, Mother.
BENTON, J.
The Department of Children and Family Services (the Department) has filed a petition for writ of certiorari asking us to quash a circuit court order authorizing the custodial parent of a dependent child to move with her child to Georgia. Invoking Article III of the Interstate Compact on the Placement of Children (ICPC), the Department complains of the lack of written notice from Georgia child welfare authorities "to the effect that the proposed placement does not appear to be contrary to the best interests of the child." § 409.401, art. III(d), Fla. Stat. (2000). But the ICPC requires no such notice when a Florida court has decided against foster care and adoption in favor of leaving a dependent child with her mother, and later rules that mother and child are free to move to another state. We therefore deny the petition.

I.
After M.G.'s father was arrested on charges of sexually abusing her, he was released pretrial, on condition that he move out of the home he had shared with M.G. and her mother, and have no further contact with the child, then two and a half years old. Thereafter, the Department filed a shelter petition under section 39.402, Florida Statutes (2000), alleging that, about a month later, the father had entered the former family home at 7:45 a.m., and stayed for approximately ten minutes. The circuit court denied the shelter petition. In doing so, however, the circuit court ordered not only that the father have no contact with the child but also that he stay away from her residence altogether. The circuit court also ordered the mother not to permit the father to have contact with M.G., and that, on the specified conditions, M.G. remain in her mother's custody.
*1049 The Department subsequently filed a dependency petition under section 39.501, Florida Statutes (2000). Mother and father thereafter consenting, the circuit court entered an order adjudicating the child dependent. M.G. remained in her mother's custody pending the disposition hearing, after which the trial court's order of disposition placed her (or continued her placement) in the care, custody, and control of her mother. M.G. was in her mother's custody throughout the proceedings below. The Department has never had custody of M.G.
On March 12, 2001, the Department filed two motions with the trial court seeking emergency review of M.G.'s placement and expedited compliance with purported requirements of Article III of the ICPC. The motions alleged that both parents intended to move to Georgia, where M.G. and her mother would live with his parents, while M.G.'s father would live with his brother at another location. The state had by then declined to prosecute the father. Acting on these motions on March 13, 2001, the trial court ordered that M.G. not be removed from the territorial jurisdiction of the court.
The parents filed separate motions on April 4, 2001, for permission for mother and child to relocate to Georgia, alleging that the mother could obtain employment in Georgia; that she was currently unemployed and relying on assistance from friends; that three weeks had elapsed since the prior order but that no steps had been taken to meet any ICPC requirements; and that it was in the best interest of the child for her and her mother to relocate. On April 12, 2001, the trial court entered an order permitting M.G. and her mother to move to Georgia "under [continued] Protective Services Supervision," although, at the request of the Department, the trial court stayed the order so the Department could file a motion for rehearing.
The Department did file an emergency motion for rehearing on April 18, 2001, asking the trial court to rescind the order authorizing relocation and to place M.G. in the Department's custody. This motion alleged that the order authorizing relocation to Georgia violated Article III of the ICPC because child welfare authorities in Georgia had not yet approved the placement. The motion indicated that, although Georgia authorities had agreed to accept an ICPC request, Georgia had not yet acted on the Department's request for supervision. At a hearing held the day the emergency motion for rehearing was filed, the circuit court decided that Article III of the ICPC did not apply. On May 7, 2001, the trial court entered an order denying the motion for rehearing, reiterating that the father was not to have contact with the child.

II.
The Department filed the notice of appeal we have treated as its petition for writ of certiorari on May 8, 2001, within thirty days of the trial court's order originally granting the parents' motions for permission for M.G. and her mother to relocate to Georgia. That the petition was filed the day after entry of the order denying the motion for rehearing was immaterial: a motion for rehearing of an interlocutory order does not stay or delay rendition. See Wagner v. Bieley Wagner & Assocs., 263 So.2d 1, 3-4 (Fla.1972); Nationwide Ins. Co. v. Forrest, 682 So.2d 672, 673 (Fla. 4th DCA 1996) (order setting aside default and default judgment); Home News Publ'g. Co. v. U-M Publ'g., Inc., 246 So.2d 117, 118-19 (Fla. 1st DCA 1971) (order denying motion to dismiss for improper venue). Cf. Bd. of County Comm'rs v. Grice, 438 So.2d 392, 394 (Fla. *1050 1983) (order dismissing complaint for improper venue was final order as to which motion for rehearing was authorized). Filed within thirty days of the original order, the petition for writ of certiorari was timely. It is also clear that the issue concerning applicability of Article III of the ICPC arose before the original order was entered.

III.
A petitioner who seeks relief by "`writ of certiorari must show either that the trial court exceeded its jurisdiction or [otherwise] departed from the essential requirements of law. Steele v. Davis, 667 So.2d 264, 264 (Fla. 1st DCA 1995).' Smith v. Smith, 764 So.2d 650, 651 (Fla. 1st DCA 2000)." St. Paul Fire and Marine Ins. Co. v. Marina Bay Resort Condo. Ass'n, 794 So.2d 755, 756 (Fla. 1st DCA 2001). "In addition to showing such a departure, the petitioner must demonstrate injury of a kind that cannot be remedied on appeal from final judgment. See Bared & Co. v. McGuire, 670 So.2d 153, 156 (Fla. 4th DCA 1996)." Id. We have quoted with approval the proposition that "in civil cases certiorari is rarely granted because the petitioner generally cannot show that any potential injury cannot be rectified on appeal." Naghtin v. Jones, 680 So.2d 573, 577 (Fla. 1st DCA 1996) (quoting Riano v. Heritage Corp. of S. Fla., 665 So.2d 1142, 1145 (Fla. 3d DCA 1996)).

IV.
Assuming for purposes of decision that the grounds urged are otherwise cognizable on petition for writ of certiorari, we reject the Department's central contention on its merits. We cannot agree that the order on review departs from the essential requirements of law for failure of child welfare authorities in Georgia to approve the relocation in accordance with Article III of the ICPC. Because her mother had lawful custody of M.G. at all pertinent times, including before she ever sought to relocatewithout effecting any change in M.G.'s custodyto Georgia, Article III of the ICPC does not apply.

A.
Article III of the ICPC does not apply because M.G.'s proposed relocation to Georgia does not entail "placement" as statutorily defined, much less placement into "foster care or ... [for] possible adoption." Article III provides:
ARTICLE III. Conditions for Placement
(a) No sending agency shall send, bring, or cause to be sent or brought into any other party state any child for placement in foster care or as a preliminary to a possible adoption unless the sending agency shall comply with each and every requirement set forth in this article and with the applicable laws of the receiving state governing the placement of children therein.
(b) Prior to sending, bringing, or causing any child to be sent or brought into a receiving state for placement in foster care or as a preliminary to a possible adoption, the sending agency shall furnish the appropriate public authorities in the receiving state written notice of the intention to send, bring, or place the child in the receiving state.
. . . .
(d) The child shall not be sent, brought, or caused to be sent or brought into the receiving state until the appropriate public authorities in the receiving state shall notify the sending agency, in writing, to the effect that the proposed placement does not appear to be contrary to the interests of the child.
*1051 § 409.401, Fla. Stat. (2000) (emphasis supplied). Because no placement of the kind contemplated by Article III(a) and (b) is at issue, the requirements of Article III(d) do not apply to M.G.'s relocation to Georgia with her mother.
The ICPC defines placement as "the arrangement for the care of a child in a family free or boarding home or in a child-caring agency or institution." § 409.401, art. II(d), Fla. Stat. (2000); see Tara S. v. Superior Court, 13 Cal.App.4th 1834, 17 Cal.Rptr.2d 315, 316 (1993). As thus statutorily defined, placement ordinarily means a change of custody, not a custodian's relocation. M.G.'s placement with her mother was intrastate, not interstate. The order under review effects no change in custody.[1] Article III of the ICPC creates no requirement that Georgia add its retrospective approval to Florida's decision that M.G. should remain in her mother's custody, in order for mother and daughter to move to Georgia.
The ICPC's provisions should be read in conjunction with one another. Article VIII(a) makes plain that Article III does not apply just because a parent who already has custody moves with his or her child from one state to another:
ARTICLE VIII. Limitations
This compact shall not apply to:
(a) The sending or bringing of a child into a receiving state by a parent, stepparent, grandparent, adult brother or sister, adult uncle or aunt, or a guardian and leaving the child with any such relative or nonagency guardian in the receiving state.
§ 409.401, Fla. Stat. (2000) (emphasis supplied). See McComb v. Wambaugh, 934 F.2d 474, 480-81 (3d Cir.1991); In re Mary L., 108 N.M. 702, 778 P.2d 449, 453 (Ct.App.1989). We are unaware of any judicial decision to the contrary.
Even if M.G.'s mother's relocation were deemed a "placement," M.G. was never placed into "foster care or ... [for] possible adoption" as contemplated by Article III(a) of the ICPC. See In re Johnny S., 40 Cal.App.4th 969, 47 Cal.Rptr.2d 94, 100 (1995) (holding "the ICPC is intended to apply only to interstate placements for foster care and preliminary to a possible adoption"); Tara S., 17 Cal.Rptr.2d at 316. But see Dep't of Children and Families v. *1052 Benway, 745 So.2d 437, 438-39 (Fla. 5th DCA 1999) (holding Article III of the ICPC does apply when an out-of-state non-custodial parent's custody is restored). "The conditions of article 3, such as advance notice to and approval of the receiving state before the placement is made, clearly do not apply when the child is placed with a parent." In re Johnny S., 47 Cal.Rptr.2d at 99.

B.
The Department relies not only on section 409.401, Florida Statutes (2000), but also on regulations promulgated by the Association of Administrators of the Interstate Compact. Without qualification, Article VII purports to confer on participating states' compact administrators, acting jointly, "power to promulgate rules and regulations to carry out more effectively the terms and provisions of this compact." § 409.401, Fla. Stat. (2000). The precise legal effect[2] of the ICPC compact administrators' regulations in Florida is unclear, but we need not reach the problematic, general question in order to decide the present case.
Pertinent ICPC compact administrators' regulations include a regulation defining "placement" for purposes of the ICPC.
"Placement" as defined in Article II(d) includes the arrangement for the care of a child in the home of his parent, other relative, or non-agency guardian in a receiving state when the sending agency is any entity other than a parent, relative, or non-agency guardian making the arrangement for care as a plan exempt under Article VIII(a) of the Compact.
Reg. 1 of the Administrators of the ICPC (emphasis supplied). Also of interest is a regulation purporting to qualify the limitation in Article VIII(a) of the ICPC.
Article VIII(a) of this Compact applies only to the sending or bringing of a child into a receiving state to a parent or other specified individual by a parent or other specified individual whose full legal right to plan for the child has been established by law at a time prior to initiation of the placement arrangement, and has not been voluntarily terminated, *1053 or diminished or severed by the action or order of any Court.
Reg. 3 of the Administrators of the ICPC (emphasis supplied). To the extent either of these regulations conflicts with the ICPC itself, the regulation(s) must give way.
"It is axiomatic that an administrative rule cannot ... contravene the provisions of a statute." State, Dep't of Bus. Regulation v. Salvation Ltd., 452 So.2d 65, 66 (Fla. 1st DCA 1984); see McComb, 934 F.2d at 481 (holding that Regulation 1 "expands the scope of the Compact beyond that set out in Article III" and is therefore "contrary to the statute under which it was promulgated"); Willette v. Air Prods., 700 So.2d 397, 401 (Fla. 1st DCA 1997) ("A statute takes precedence over a rule."). But see Ariz. Dep't of Econ. Sec. v. Leonardo, 200 Ariz. 74, 22 P.3d 513, 518-19 (Ct.App.2001). In plain language, Article VIII(a) renders Article III of the ICPC inapplicable to the "sending or bringing of a child into a receiving state by a parent."
Interpreted properly, moreover, the compact administrators' regulations do not apply, because M.G.'s mother had custody before she decided to move to Georgia. Although the circuit court had declared M.G. dependent, it granted her mother full authority, at least insofar as the right to move to Georgia was involved, to "plan for the child." Reg. 3 of the Administrators of the ICPC. Nor was her decision to relocate a "placement" as defined by the regulations. See Reg. 1 of the Administrators of the ICPC.

V.
Only because the circuit court ordered continued supervision have we reached the question left unanswered in Dep't of Health and Rehabilitative Servs. v. M.W., 424 So.2d 56, 57 (Fla. 1st DCA 1982). Under the circuit court's order, the Department is obliged to provide continued supervision, M.G.'s move to Georgia notwithstanding. How it does so is within the Department's discretion to decide, in the first instance.[3] If the Department determines that the assistance of a social worker in Georgia is required, it may "enter into agreements with appropriate officers or agencies [in Georgia] ... pursuant to paragraph (b) of Article V of the Interstate Compact on the Placement of Children." § 409.404(1), Fla. Stat. (2000).
The Department having failed to show that the circuit court departed from the essential requirements of law, the petition for writ of certiorari is denied.
ALLEN, C.J., and BOOTH, J., concur.
NOTES
[1] Several courts have applied or seemed to apply Article III of the ICPC when a dependent child's custody was transferred to nonresident family members, including parents. See Dep't of Children and Families v. Benway, 745 So.2d 437, 439 (Fla. 5th DCA 1999) (placement with previously non-custodial, natural father in Vermont); Dep't of Health and Rehabilitative Servs. v. J.M.L., 455 So.2d 571, 572 (Fla. 1st DCA 1984) (placement with grandparents in Georgia); D.S.S. v. Clay County Dep't of Human Res., 755 So.2d 584, 590 (Ala.Civ.App.1999); Ariz. Dep't of Econ. Sec. v. Leonardo, 200 Ariz. 74, 22 P.3d 513, 518-19 (Ct.App.2001); Adoption of Warren, 44 Mass.App.Ct. 620, 693 N.E.2d 1021, 1024-25 (1998); State ex rel. Juvenile Dep't v. Smith, 107 Or.App. 129, 811 P.2d 145, 147 n. 4 (1991).

In the cases upon which the Department relies, a state with legal custody of a child sought to place the child with relatives or foster parents out of state. See Benway, 745 So.2d at 438-39; J.M.L., 455 So.2d at 572; Leonardo, 22 P.3d at 519 ("It is not contrary to the description of `placement' ... to find that the description includes placement of a child who is the subject of a protective action and in the legal custody of the state in a home with an out-of-state parent whose rights have been `diminished or severed by the action or order of any Court.' ICPC Reg. 3."); Smith, 811 P.2d at 147 n. 4 ("The compact does apply to a child who is sent to another state for placement with parents or relatives, when someone other than a parent or relative makes the placement."). The Department cites no case holding that Article III of the ICPC applies to parents who already have custody merely because they move across state lines.
[2] Any regulations promulgated before Florida adopted the ICPC did not, of course, reflect the vote of a Florida compact administrator, and no such regulations were ever themselves enacted into law in Florida. When the Legislature did adopt the ICPC, it did not (and could not) enact as the law of Florida or adopt prospectively regulations then yet to be promulgated by an entity not even covered by the Florida Administrative Procedure Act. See Freimuth v. State, 272 So.2d 473, 476 (Fla. 1972); Fla. Indus. Comm'n v. State ex rel. Orange State Oil Co., 155 Fla. 772, 21 So.2d 599, 603 (1945) ("[I]t is within the province of the legislature to approve and adopt the provisions of federal statutes, and all of the administrative rules made by a federal administrative body, that are in existence and in effect at the time the legislature acts, but it would be an unconstitutional delegation of legislative power for the legislature to adopt in advance any federal act or the ruling of any federal administrative body that Congress or such administrative body might see fit to adopt in the future."); Brazil v. Div. of Admin., 347 So.2d 755, 757-58 (Fla. 1st DCA 1977), disapproved on other grounds by LaPointe Outdoor Adver. v. Fla. Dep't of Transp., 398 So.2d 1370, 1370 (Fla.1981). The ICPC compact administrators stand on the same footing as federal government administrators in this regard.

The ICPC dates to the late 1950s. See Kimberly M. Butler, Child Welfare-Outside the Interstate Compact on the Placement of Children-Placement of a Child with a Natural Parent, 37 Vill. L.Rev. 896, 896 (1991). Florida enacted the ICPC some fifteen years later. See Ch. 74-317, § 1, at 983-87, Laws of Fla. Except for "genderfication," see Ch. 97-103, § 48, at 1794-98, Laws of Fla., the original enactment has never been amended.
[3] We note that, if the father had been prosecuted, convicted and incarcerated in Florida, the Department might well have been able adequately to monitor without the assistance of a social worker in Georgia. See In re Johnny S., 40 Cal.App.4th 969, 47 Cal.Rptr.2d 94, 101 (1995) (finding "no evidence that the situation [in Texas] cannot be monitored ... from California" in accepting argument that "supervision `can be conducted by correspondence, electronic mail, facsimile and telephone'").