**RECORD IMPOUNDED**

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3001-12T3

NEW JERSEY DIVISION OF CHILD
PROTECTION AND PERMANENCY,

    Plaintiff-Respondent,

v.

L.W.,

    Defendant-Appellant,

and

R.W.,[1]

    Defendant.

_____

IN THE MATTER OF I.W. and K.W.,

    Minors.

_____

<div style="border:1px solid black">

**APPROVED FOR PUBLICATION**

**April 7, 2014**

**APPELLATE DIVISION**

</div>

Submitted February 25, 2014 — Decided April 7, 2014

Before Judges Fisher, Koblitz and O'Connor.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FN-07-172-13.

Joseph E. Krakora, Public Defender, attorney for appellant (Phuong V. Dao, Assistant Deputy Public Defender, on the brief).

---

[1] R.W. did not appeal.

John J. Hoffman, Acting Attorney General, attorney for respondent (Andrea M. Silkowitz, Assistant Attorney General, of counsel; Mary L. Harpster, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minors I.W. and K.W. (Nancy P. Fratz, Assistant Deputy Public Defender, on the brief).

The opinion of the court was delivered by

KOBLITZ, J.A.D.

L.W. (Lisa[2]), appeals from a February 6, 2013 fact-finding and dispositional order finding that Lisa neglected her two young children by failing to provide housing. We agree with Lisa and the Law Guardian's position on appeal that the proofs demonstrated Lisa's impoverished condition, but did not substantiate neglect. We therefore reverse.

Lisa first came to the attention of the New Jersey Division of Child Protection and Permanency (the Division) in 2010 when she was arrested with others in connection with drugs found in an apartment where she was staying. Her older daughter, Isabel, was less than a year old at the time. The child was taken from Lisa as she could not provide care when she was incarcerated. Lisa stipulated to abuse or neglect and her name was entered

---

[2] We use fictitious names to protect the identity of the children.

into the child abuse registry pursuant to N.J.S.A. 9:6-8.11. Lisa successfully completed services, Isabel was returned, and the litigation dismissed in November 2011. The Division continued to provide services. In September 2012, Lisa told the Division caseworker that she had relocated to Georgia. The Division referred the family to the Georgia child protection agency.

On October 10, 2012, Lisa brought Isabel, now four years old, and Kate, twenty months old, to the Division office. Lisa told the caseworker that she had explored all her options and could not find housing. Lisa consented to the temporary placement of her two young daughters in foster care.

Two days later, at the order to show cause hearing on the complaint filed by the Division, the caseworker testified that the children seemed healthy, safe and happy when Lisa brought them to the office. They were clean, well-fed and well-clothed. She testified that the only concern was a lack of housing. Lisa's lawyer told the judge that Lisa had been staying with her fiancé "in a TRA rental assistance program, and that program only allows him and children in his legal and physical custody to remain with him." Because the fiancé was not a legal custodian of the children, Lisa and her children were forced to leave. The attorney also said that Lisa had made an appointment

"with Welfare" for the following week to secure her own rental assistance, had called her aunt, who did not respond, and had filed a complaint in court to give her fiancé joint custody so that he could assist in finding housing for the family. The judge stated:

> —it sounds as though [Lisa] did the responsible thing by coming to [the Division] and being responsible and — and saying look, I —right now I'm homeless, I have no way to provide for my children, can you help me, and that's what they're doing.

In spite of the spirit of cooperation expressed at this hearing, the Division sought to prove Lisa's neglect of her two children at a fact-finding hearing in February 2013, held before a different judge.

The Division caseworker, Carlotta Leak, testified that in July 2012 St. Michael's Hospital reported that Lisa was at the hospital with her children, upset that she had no housing. Lisa then told the Division she was moving to Georgia. The Division received another referral at the end of July that Lisa was living with her children at Newark Penn Station. The Division was unable to verify this report, but met with Lisa on October 10 when she voluntarily came to the office seeking housing for her children. Leak testified that Lisa told her she had gone to Georgia, but it did not work out.

Lisa testified on her own behalf that she moved to Georgia with her fiancé in June after a fire destroyed her New Jersey housing. She explained that they all returned to New Jersey in July following a death in her fiancé's family and then had insufficient funds to return to Georgia. While in New Jersey, they lived with her fiancé's uncle from August until the middle of September and then moved to a shelter until forced to leave in early October. Lisa testified that she "went down to Welfare" and was denied benefits because she was unable to participate in a job search program due to childcare issues. She also reached out to Newark Emergency Services, but was not eligible for housing. She then took the children to live with her fiancé in his transitional housing in a Newark hotel. Lisa testified that she had unsuccessfully sought employment as well. She said she came to the Division office to seek help for her children when all else failed so they would not be living "out on the street." She testified that after the children were placed, she found a full-time job with the Federal Emergency Management Agency.

In an oral decision immediately following Lisa's testimony, the judge found that Lisa did not have housing for her children due to her "unbelievably poor planning." He also found it "hard to believe that Welfare would have offered her" a program, but

denied her request for the necessary childcare. He criticized Lisa for following her fiancé in spite of the effect on her children. The court also found Lisa to be irresponsible for leaving permanent housing in Georgia to come to New Jersey without the means to return. The decision was followed by a dispositional hearing after which the judge ordered visitation and other services.

On appeal Lisa raises the following issues:

POINT I: LISA'S FINANCIAL DIFFICULTY IN SECURING HOUSING IS NON-ACTIONABLE NEGLECT BECAUSE IT IS BASED ON POVERTY AND SHE ATTEMPTED TO LOOK FOR EMPLOYMENT.

POINT II: LISA'S CONDUCT DOES NOT FALL BELOW THE MINIMUM DEGREE OF CARE BECAUSE SHE LOOKED FOR EMPLOYMENT AND SOUGHT HELP FROM THE DIVISION, WELFARE, AND NEWARK EMERGEN[C]Y SERVICES FOR FAMILY.

We review appeals as of right from a final judgment of the Superior Court. R. 2:2-3(a)(1). As a threshold matter, we consider whether the February 6, 2013 finding of abuse or neglect was a final order ripe for appellate review. A parent is entitled to appeal as of right from a fact-finding determination followed by a final order of disposition. N.J.S.A. 9:6-8.70. Upon completion of a Title Nine finding of abuse or neglect, the court must hold a dispositional hearing in order to determine whether the child may safely return to the custody of the parent from whom the child was removed. N.J.S.A.

9:6-8.45 to -8.50. As we noted in N.J. Div. of Youth and Family Servs. v. L.A., 357 N.J. Super. 155, 164 (App. Div. 2003), N.J.S.A. 9:6-8.70 does not define what constitutes a final appealable dispositional order. Even though the family judge stated in this dispositional order that it "is a final order with regard to the fact finding," the order was not truly final as the Title Nine action remained open, further services were ordered and the children were not returned to their mother. The correct procedural mechanism for review of an interlocutory Title Nine order is by motion for leave to appeal pursuant to R. 2:5-6. L.A., supra, 357 N.J. Super. at 165. We are, however, persuaded to relax this requirement and grant leave to appeal as within time. See id. at 166 (the grave impact of a protracted post abuse or neglect finding proceedings militates in favor of considering an appeal in spite of its procedural defects).

We must "accord deference to factfindings of the family court because it has the superior ability to gauge the credibility of the witnesses who testify before it and because it possesses special expertise in matters related to the family." N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 448 (2012) (citing Cesare v. Cesare, 154 N.J. 394, 413 (1998)). We may not "second-guess or substitute our judgment for that of the family court," so long as "the record contains

substantial and credible evidence to support" the family court's decision. Id. at 448-49. We accept the judge's characterization of Lisa's housing deficit as being a result of poor planning. The judge's belief that Lisa was not credible with regard to her inability to participate in the job search and training program, however, is not based on any evidence in the record. We do not assume that welfare agencies are always able to accommodate the immediate childcare needs of participants. Had the Division offered testimony to support that conclusion, the judge might well have accepted that testimony, but an assumption that programs function in an optimal way for all participants is not justified.

In pertinent part, Title Nine defines an abused or neglected child as one

> whose physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired as the result of the failure of his parent or guardian, as herein defined, to exercise a minimum degree of care (a) in supplying the child with adequate food, clothing, shelter, education, medical or surgical care though financially able to do so or though offered financial or other reasonable means to do so . . . .

> [N.J.S.A. 9:6-8.21(c)(4)(a).]

Through the admission of "competent, material and relevant evidence," the Division must prove by a preponderance of the

evidence that the child was abused or neglected. <u>N.J.S.A.</u> 9:6-46(b). The judge did not find that Lisa was "financially capable" of providing shelter for her children and chose not to do so; he found only that Lisa had engaged in "poor planning" which led her family into homelessness. <u>See</u> <u>N.J. Div. of Youth and Family Servs. v. K.M.</u>, 136 <u>N.J.</u> 546, 550 (1993) (finding neglect where the parents are financially and physically capable of providing adequate food, clothing and shelter for their children, but failed to do so despite Division assistance). It is well-settled that poverty alone is not a basis for a finding of abuse or neglect. <u>Doe v. G.D.</u>, 146 <u>N.J. Super.</u> 419, 430-31 (App. Div. 1976), <u>aff'd sub. nom.</u>, 74 <u>N.J.</u> 196 (1977); <u>see also In re Guardianship of J.E.D.</u>, 217 <u>N.J. Super.</u> 1, 13 (1987) (stating that the Family Part judge should be careful not to decide a case because of a cultural bias or because of the parents' economic or social circumstances), <u>certif. denied</u>, 111 <u>N.J.</u> 637 (1988).

Lisa's poor planning is at least in part a side-effect of poverty. She sought housing through government agencies. She sought employment to no avail. Like many people, she formed a bond with her fiancé and tied her family welfare to his ability to provide housing. Ultimately, he was unable to provide housing for the children, so Lisa did what was in their best

interest by coming to the Division for help instead of subjecting her children to further homelessness. We agree with the first judge who reviewed this matter that by seeking help from the Division, Lisa "did the responsible thing." The Division, as a child welfare agency, has a primary mission to help families stay together and to assist parents to raise safe and healthy children. See N.J.S.A. 30:4C-11.3 (citing a general policy to reunify families absent imminent threat to a child's safety).

Although there was insufficient evidence to sustain a finding of neglect under Title Nine, the Division may still provide services to Lisa and her family with her consent pursuant to N.J.S.A. 30:4C-11, or may seek a court order to provide services in the best interest of the children pursuant to N.J.S.A. 30:4C-12. See N.J. Div. of Youth and Family Servs. v. I.S., 214 N.J. 8, 15 (2013) (stating that the Legislature intended N.J.S.A. 30:4C-12 to authorize the court to "award care, supervision, and even custody" to the Division "when children need services and a parent cannot provide that help for no fault-based reason"), cert. denied, __ U.S. __, 134 S. Ct. 529, 187 L. Ed. 2d 380 (2013).

It is important that impoverished, homeless parents feel free to call on the Division in times of need, without fear of

being found neglectful for "poor planning."  See The New Jersey Safe Haven Infant Protection Act, N.J.S.A. 30:4C-15.6 to -15.11 (permitting a parent to anonymously leave an infant less than thirty days old at designated locations with the "freedom from prosecution [to] encourage the parent to leave an infant safely and save the life of an infant").  For the many people who live on or over the edge of homelessness in New Jersey, the Division may be their last resort; it provides a way to find safe housing for their young children, even at the cost of the parent's temporary separation from those children.  Such a parental sacrifice to promote the welfare of their children should be encouraged.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION