# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1004-18T1

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

S.M.,

     Defendant-Appellant,

and

A.A.,

     Defendant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF K.Q.,
A.Q., and M.Q.,

     Minors.

_____

Submitted September 16, 2019 – Decided October 23, 2019

Before Judges Rothstadt and Moynihan.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Middlesex County, Docket No. FN-12-0122-16.

Joseph E. Krakora, Public Defender, attorney for appellant (Robyn A. Veasey, Deputy Public Defender, of counsel; Phuong Vinh Dao, Designated Counsel, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Jane C. Schuster, Assistant Attorney General, of counsel; Alicia Y. Bergman, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minors (Melissa R. Vance, Assistant Deputy Public Defender, on the brief).

PER CURIAM

Defendant S.M. appeals from a Family Part order entered after a three-day fact-finding hearing, N.J.S.A. 9:6-8.44, determining the Division of Child Protection and Permanency (Division) proved she abused or neglected her three children of whom she had sole custody: K.Q. (Kenny), A.Q. (Ava) and M.Q. (Maya), born November 1999, December 2001 and July 2004, respectively.[1] Defendant argues the judge's findings of abuse and neglect were erroneous and

---

[1] To protect their privacy and the confidentiality of these proceedings, and for clarity, we use the pseudonyms utilized by the Division in its merits brief—the only brief to use pseudonyms—to refer to the parents and their children. R. 1:38-3(d)(12).

not supported by the evidence and the judge "engaged in impermissible gap filling and took judicial notice of harm in reaching" his findings. We disagree and affirm.

Under Title Nine, an abused or neglected child is:

> a child whose physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired as the result of the failure of his parent . . . to exercise a minimum degree of care . . . in providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm, or substantial risk thereof, including the infliction of excessive corporal punishment; or by any other acts of a similarly serious nature requiring the aid of the court[.]
>
> [N.J.S.A. 9:6-8.21(c)(4)(b).]

The Division has the burden to "prove that the child is 'abused or neglected' by a preponderance of the evidence, and only through the admission of 'competent, material and relevant evidence.'" N.J. Div. of Youth & Family Servs. v. P.W.R., 205 N.J. 17, 32 (2011) (quoting N.J.S.A. 9:6-8.46(b)). In making a finding of abuse or neglect, a court must consider "the totality of the circumstances, since '[i]n child abuse and neglect cases the elements of proof are synergistically related. Each proven act of neglect has some effect on the [child]. One act may be "substantial" or the sum of many acts may be "substantial."'" N.J. Div. of Youth & Family Servs. v. V.T., 423 N.J. Super.

320, 329-30 (App. Div. 2011) (alterations in original) (quoting Dep't of Children & Families, Div. of Youth & Family Servs. v. C.H., 414 N.J. Super. 472, 481 (App. Div. 2010)). Ultimately, the question is whether the parent failed to exercise "a minimum degree of care[,]" such that the child was exposed to "a substantial risk." Dep't of Children & Families, Div. of Youth & Family Servs. v. T.B., 207 N.J. 294, 303 (2011).

Under our well-settled standard of review, we are bound by the Family Part's factual findings if supported by sufficient credible evidence. N.J. Div. of Youth & Family Servs. v. I.H.C., 415 N.J. Super. 551, 577-78 (App. Div. 2010). Although we accord particular deference to the family court's factfinding because of the court's "special expertise" in family matters, its "feel of the case," and its opportunity to assess credibility based on witnesses' demeanor, N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008) (quoting N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 293 (2007)); Cesare v. Cesare, 154 N.J. 394, 412 (1998), the finding that conduct constitutes gross negligence, as opposed to simple negligence, is a "conclusion of law to which we are not required to defer," T.B., 207 N.J. at 308 (quoting N.J. Div. of Youth & Family Servs. v. A.R., 419 N.J. Super. 538, 543 (App. Div. 2011)).

A-1004-18T1

Guided by these tenets, we conclude the record supports the judge's findings that

> the issue before the [c]ourt is neither a single act [n]or omission by [defendant] nor is it alleged by the defense that the acts or omissions were simply inattentive nor mere negligence. To the contrary, any and all actions taken by [defendant] or actions not taken by [defendant] regarding the supervision of the children were repetitive, intentional and purposeful.
>
> The [c]ourt finds by a preponderance of the credible evidence and documentary evidence that [defendant] intentionally and knowingly 1) did not provide her three children ages [eleven] through [sixteen] with a key to the home; 2) did not allow them entry into the home and in fact precluded their access unless she was present; 3) did not give any of the children cell phones; 4) did not give any of the children money; 5) knew that without cell phone[s] the children could not freely communicate with each other or with her and were dependent upon others; 6) knew the final restraining order was obtained which prevented the father who lived in town from having any unsupervised with the child due to the father's previous threats to kill the children; 7) that . . . she had expressed concerns and fear that the children may try to reach out to their father who lived in close proximity; 8) was fully aware that [Kenny] had a history of mental health issues due to threats of hurting himself or others and was hospitalized the previous May which required mental health treatment including counseling and medication.

Defendant admits in her merits brief that she did not allow her children access to their residence unless she was present; as such the children were not

5

provided keys. She also acknowledges there is an active final restraining order against the children's father, A.A. (Albert), who is prohibited from having unsupervised contact with the children; in obtaining the restraining order, defendant had alleged Albert threatened to kill himself and all three children.

Contrary to defendant's contention that she "had a specific after[-]school schedule for her children, the evidence—particularly the testimony of Ava, whom the judge found to be a reliable witness and Kenny, whom the court found to be largely credible—supported the judge's determination that no real plan for the two younger children existed. Although the children frequented the library and a pizzeria after school and participated in activities, and Maya often went to a friend's house, there was no set schedule. Indeed, the judge looked askance at defendant's averment when she was "unable to provide the names of any of these children's friends where her children were supposedly at." At times, Ava took Maya with her to her babysitting job and picked Maya up from her friend's house when defendant was unable to retrieve Maya prior to the friend's family's dinner hour. On other occasions, the children would have to leave the library when it closed early, forcing them to wait outside until defendant got home. As the judge found in his amplified decision, R. 2:5-1(b), defendant "took no action to

6

make legitimate after[-]school arrangements or to confirm that the children were at their designated locations." The judge continued,

> these three children were on their own, sometimes at friends' houses, sometimes not. Sometimes at the library, sometimes not. Sometimes at the pizzeria, sometimes not. But in any event, these children were completely left to their own devices to care for themselves and others. There was no after[-]school plan. And the children were limited in their ability to speak to their mother. Their mother was limited in her ability to speak to the children. And there was absolutely no plan in the event of an emergency.

Testimony by Kenny and Ava supported that the children did not always have ready access to phones to contact defendant. Moreover, their testimony proved they were not always able to reach defendant on her cell phone because she did not answer, could not talk at work, or had a full voicemail inbox. Kenny also testified there was no emergency plan. And Ava said defendant told her to memorize a friend's number in case of emergency or to contact a neighbor to whom defendant had introduced Ava. But Ava had no way of making an emergent call if a phone was not available, and had no other option if the friend or neighbor was unavailable.

The children's testimony also refutes defendant's argument that the occasions when the children had to wait for her were rare. They said that on more than one occasion they had to wait for defendant to arrive home, as late as

7

9:00 p.m. and 10:00 p.m., and had to rely on others for food and shelter. They even resorted to surreptitiously leaving the residence door unlocked so they could access their home.

We fully recognize that not every parent can afford to give a child, much less three children, a cell phone. See N.J. Div. of Child Prot. & Permanency v. L.W., 435 N.J. Super. 189, 195 (App. Div. 2014). Likewise, we are not considering that the children were left without money because there is an insufficient record to determine if defendant had the financial ability to provide same. But allowing that "[a]t the very least, a minimum degree of care means that a parent's conduct must be 'grossly negligent or reckless'" and "a parent's negligent conduct is not sufficient to justify a finding of abuse or neglect under [Title Nine]," N.J. Div. of Child Prot. & Permanency v. Y.N., 220 N.J. 165, 180 (2014) (quoting T.B., 207 N.J. at 306), defendant's actions here were more than "merely negligent." T.B., 207 N.J. at 307.

We agree with the Family Part judge's determination that the "children were left in a constant state of uncertainty of what they were going to do after school, where they would go, what time they would be allowed back home as [defendant] was inconsistent in the time that she returned back to town and was on many occasions unreachable." While we are sympathetic to the dilemma

single, working mothers face, defendant's policy of denying her children access to their home without an established and consistent plan for their shelter, sustenance and care left them with no reliable means to communicate with her, no safe place at which she knew they would be, and, at times, without food or, literally, a roof over their heads.

As the judge found, defendant's decision necessitated the children go to their father, in contravention of the restraining order, for necessities such as money or bathroom facilities even though "[t]he trial testimony established that [defendant] was afraid that the children would contact their father. And despite her stated concern and despite the restraining order, she prevented the children from going to their own home[.]"

The judge also found Kenny was under an 8:30 p.m. curfew which defendant was ordered to enforce, and that defendant's "actions caused [Kenny] to violate his curfew as she did not pick him up until after 8:30 [p.m.] . . . leaving him subject to a violation of probation and penalties."

The judge also noted defendant knew Kenny was "obtaining mental health counseling and medication due to his threat of hurting himself and others." The judge decried: defendant's failure to provide supervision to Kenny; leaving him

9

without a way of communicating with her in the event of an emergency; and her nescience of his whereabouts.

The judge acknowledged not every case of a child's inability to enter her or his home or to communicate with a parent would rise to the level of abuse or neglect. But the judge found defendant's actions were not inadvertent, but "intentional choices" that were not "isolated, but rather were a way of life for these children."

Deferring to the Family Part judge's findings of fact that are well-supported by the record evidence, we agree that the Division proved by a preponderance of the evidence that defendant's gross failure to properly supervise her children exposed each of them to imminent danger and a substantial risk of harm under the totality of the circumstances, rendering the children abused or neglected. See N.J. Dep't of Children & Families, Div. of Youth & Family Servs. v. A.L., 213 N.J. 1, 23 (2013).

To the extent we have not addressed any of defendant's remaining arguments, we conclude they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1004-18T1