# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-6041-17T3

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Appellant,

v.

T.L.L.,

     Defendant-Respondent,

and

T.C.P., SR., and C.C.,

     Defendants.

_____

IN THE MATTER OF K.P., L.P.,
D.L., and P.R.L.,

     Minors.

_____

Submitted March 16, 2020 – Decided June 25, 2020

Before Judges Rothstadt and Moynihan.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FN-07-0285-18.

Gurbir S. Grewal, Attorney General, attorney for appellant (Jason Wade Rockwell and Donna Sue Arons, Assistant Attorneys General, of counsel; Lisa J. Rusciano, Deputy Attorney General, on the briefs).

Joseph E. Krakora, Public Defender, attorney for respondent (Deric D. Wu, Assistant Deputy Public Defender, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minors (Noel Christian Devlin, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

In this Title 9 Action, N.J.S.A. 9:6-8.21 to -8.73, plaintiff, the New Jersey Division of Child Protection and Permanency (Division), appeals from the Family Part's July 18, 2018 order dismissing its complaint alleging abuse or neglect of the subject four children by their mother, T.L.L. (Terry).[1] A Family Part judge entered the order after a fact-finding hearing in which she determined that the Division failed to prove, by a preponderance of the evidence, that the children were abused or neglected even though the evidence established that there were issues with the mother's maintaining a clean home and separate

---

[1] Pseudonyms are used to protect the family's confidentiality.

sanitary sleeping arrangements for the children. According to the judge, the Division failed to prove that the mother's actions rose to the level of gross negligence, and thus that the children were subject to the risk of imminent danger needed to support a finding of abuse or neglect.

On appeal, the Division argues that the judge "erred as a matter of law in limiting [her] analysis and the Division's proofs . . . to the scope of the Division's investigative findings rather than considering all of the relevant facts." It also contends that the judge's "determination . . . was based on [her] misunderstanding and misapplication of controlling precedent." We disagree and affirm.

Terry has four minor children: K.P. (Karen), who was born in 2001; L.P. (Lisa), born in 2002; D.L. (Dara), born in 2008; and P.R.L. (Paula), born in 2011. Prior to the Division filing its complaint in January 2018, Terry and her family were known by the Division since 2005, based upon numerous referrals received about her children's hygiene as well as the unsanitary conditions of their home. It was alleged then that the children's clothing was filthy, they were unwashed, and Terry failed to maintain her home in a sanitary condition. When those referrals were substantiated, the children were removed from the home

and services were provided, ultimately leading to the return of the children and the closing of the cases.

The present action arose from a December 2017 referral focusing on Lisa's hygiene, alleging she wore filthy clothing to school every day and was not being subjected to proper hygiene. Lisa Piggot-Lafond, a Division case worker, investigated the referral by first visiting Terry's home. At that time, Terry's mother, as well as Terry's two adult sons, were living in the home with Terry and the four minors.

At the home, Piggot-Lafond sensed the smell of urine throughout the premises and observed dirty mattresses. In addition, she noted that the house was strewn with filthy clothing and garbage, the refrigerator contained rotten food, and there was evidence of insect infestation. The one bathroom servicing the home was also filthy and she observed six cats and litter boxes that required cleaning. According to Piggot-Lafond, the one bedroom shared by the four minors had one bed that was obviously damaged, and their room was just as filthy.

At the time of the investigation, Terry informed Piggot-Lafond that she was not working and relied upon the receipt of approximately $800 per month that she received from social security as a result of her children's disabilities. In

addition, Terry explained she received food stamps and her mother was receiving disability of approximately $2000 per month. Her rent for the premises, which was approximately $1300 per month, was current as were all of the bills for her utilities.

When asked about her children's lack of hygiene, Terry denied that her children wore dirty clothing, did not shower daily, or did not have their laundry done. She acknowledged that Lisa still wet the bed although she had been taking medication to address the problem, but it did not work and she chose to discontinue its use. Terry also acknowledged that her daughter Karen had asthma, but Terry did not believe that her maintaining cats in the home was a problem.

Piggot-Lafond spoke to Lisa who denied that she wore soiled clothing to school, although Piggot-Lafond observed during their conversation that Lisa's clothing was dirty. Piggot-Lafond inquired about Lisa's attendance at school and did not receive any response about why she had as many absences as she did. Lisa also confirmed that she was responsible for doing her own laundry, which she estimated she attended to approximately twice per month.

In subsequent interviews with Karen, Dara, and Paula, they too denied wearing soiled clothing to school, but again Piggot-Lafond observed that the

A-6041-17T3

clothing they were wearing was unclean. Those children also stated that they showered and changed their clothes regularly, but confirmed that both Dara and Lisa continued to urinate in their bed.

Piggot-Lafond persuaded Terry to enter into an agreement addressing the deficiencies in the home's cleanliness and requiring Terry to participate in services for the children that included following up with a doctor about the bed-wetting issues and Karen's asthma condition. Terry also agreed to have the cats removed from her home, to undergo a psychological evaluation, and to comply with any other recommendations for services to assist her and her family.

Thereafter, when Piggot-Lafond returned to the home five days later to follow up, she found that although some progress was made in cleaning up the house, it was insufficient. For that reason, the Division determined that the allegations of neglect had been established.

The Division filed its complaint on January 26, 2018, alleging that the children were abused or neglected. In paragraph eight, the Division alleged the facts upon which the complaint was based. The complaint then described the various referrals that were made from 2005 through 2015 and the events leading up to the Division's case being closed in 2016. That history included allegations

6

of medical and educational neglect[2] that related only to Terry's now adult children, who are not the subject of this action.

Turning to the present allegations, the complaint described the December 2017 referral that led to Piggot-Lafond's investigation and her findings as to the cleanliness of the home and the children. The allegations did not reference any educational or medical neglect.

The order to show cause, filed by the court with the filing of the complaint that same day, stated the Family Part judge found, based on Piggot-Lafond's testimony, that "the children are living in unsanitary conditions and are not attending school regularly. [Terry] is not attending to their medical needs."

---

[2] Under N.J.S.A. 9:6-8.21(c)(4)(a), an abused or neglected child includes one

> whose physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired as the result of the failure of his parent or guardian . . . to exercise a minimum degree of care (a) in supplying the child with adequate . . . education, medical or surgical care though financially able to do so or though offered financial or other reasonable means to do so.

"The reference to education contained in N.J.S.A. 9:6-8.21(c)(4)(a) concerns parental encouragement to truancy of a school age child, or other interference with normal educative processes." Doe v. G. D., 146 N.J. Super. 419, 431 (App. Div. 1976), aff'd sub nom. Doe v. Downey, 74 N.J. 196 (1977).

Piggot-Lafond had testified at the hearing for the order to show cause that the children were frequently absent from school and that despite Terry's recognizing that her daughter had asthma, there were still cats present in the home that acted as a trigger for that asthma. In her oral decision that day, the judge stated that she had concerns based upon allegations made by the Division about "the unsanitary conditions and the appearance[s] of the children as well as their sleeping arrangements and their medical needs," citing to Terry keeping cats in the home while her daughter suffered from asthma. There was no mention of educational or medical neglect in the judge's oral findings.

At the return of the order to show cause, the judge continued to express concern about the effect of the presence of the cats on Karen's asthma. The judge asked for "something from the pulmonologist or otherwise" regarding the problem, if any, with the presence of the cats in the home. Terry's attorney advised the judge that Terry already had appointments scheduled, had been to a pulmonologist prior to the hearing, and that they would endeavor to get an opinion from one of the doctors, but that the timing of it was "out of her control." At the conclusion of the hearing the court entered an order directing that a recommendation be obtained from the appropriate doctor.

A-6041-17T3

By the next hearing in May 2018, the opinion from the doctor had not yet been received. However, the cats had been temporarily removed from Terry's residence. At the conclusion of the hearing, the judge ordered Terry to get the information from the doctors and schedule and attend all the children's medical and dental appointments, as well as meetings at school regarding the children's attendance and progress.

On July 18, 2018, the judge conducted the fact-finding hearing. Prior to the commencement of the hearing, Terry objected to the admission of the children's school records. Among other objections, Terry asserted that the records were irrelevant because the Division's complaint did not include allegations of educational neglect. According to the Division, the records were admissible because they were part of the totality of the circumstances and related to whether the children were being abused or neglected. In addition, the Division argued that the documents were relevant because the claims to which they related came within the purview of the statutory grounds for abuse and neglect. In response, the judge held that the information was not "relevant to a finding of basic needs in and of itself. There[ is] other evidence that the Division has put forward that is specifically relating to the failure to provide basic needs. So I am not going to allow [the evidence] in on relevant grounds."

A-6041-17T3

At the hearing, the only witness to testify was Piggot-Lafond. She testified to Terry's involvement with the Division, and her and the Division's investigation regarding the specific allegations of abuse or neglect. Neither Terry's counsel nor the Law Guardian cross-examined her, and neither of them offered any witnesses or other evidence in response.

After considering the testimony and documents that were admitted into evidence, the judge placed her findings on the record. The judge reviewed Terry's history dating back to 2005 and noted that it included a substantiation for educational and environmental neglect. Turning to the present matter, the judge observed that it was initiated as a result of the December 2017 referral that related to the children's hygiene. The judge found that the initial investigation revealed the home was filthy as described by Piggot-Lafond but "that the utilities were working [and] [t]here was sufficient food in the home and the rent was up-to-date."

The judge recounted the case worker's findings as to her initial interviews with the children concerning their bed-wetting issues that resulted in problems with the cleanliness of their bedroom and their clothing. The judge also found that Karen told Piggot-Lafond "she misses school because of her asthma and has allergies to cats" and other animals. However, the judge found that the reports

from the school about the children's hygiene indicated that Dara appeared in school "clean and neat," and Paula was "well-groomed, well-rested, clean and dressed nicely."

The judge then explained the purposes of Title 9 and its intent to protect children from actual or threatened harm. Turning to the Division's burden of proof, the judge stated that it was up to the Division to prove, by a preponderance of the evidence where, as here, there was no actual harm, "imminent danger or substantial risk of harm to a child." And, that it was the judge's obligation to "consider the totality of the circumstances to determine whether a child has been placed at an unacceptable risk by the conduct of the parent."

The judge then found that there was no question that Terry's home "was dirty and the children's hygiene . . . [was] not properly maintained." However, she also found that two of the children were "reported to be clean and well-groomed." Moreover, the judge determined that Terry had been cooperative with services provided through the Division. The judge also found that allowing the four children to sleep in one bed, especially when two of them were continually urinating during the night, was inappropriate, but, she stated that "the issue here is whether [Terry] failed to provide basic needs for her children."

11

Citing to G.D., 146 N.J. Super. at 433, the judge concluded that "a dirty home does not establish abuse or neglect." For that reason, "[b]ased on the totality of the circumstances, despite the fact that [Terry] has a history . . . [with the] cleanliness of the home, the [c]ourt does find that the Division has not met its burden of proof." The judge concluded that Terry's "failure to ensure the cleanliness of her home and the hygiene of her children does not rise to the level of gross negligence" and therefore "the children are not abused or neglected under Title 9."

The judge then continued the matter under Title 30[3] with the Division providing services as needed by the family. The judge also directed that the Division's administrative finding that abuse or neglect was established be removed from the Division's records.

The judge entered an order that day reflecting her decision. In a separate order entered the same day, the judge terminated the litigation because the children remained in the home and the "conditions have been remediated." This appeal followed.

---

[3] Where there is no finding of abuse or neglect under Title 9, but there is a need for services, the matter may proceed under a Title 30 action for care and supervision. See N.J.S.A. 30:4C-12.

12

On appeal, in its initial argument, the Division contends that the judge improperly rejected evidence of medical and educational neglect by improperly limiting the scope of the evidence to the Division's investigative findings. According to the Division, "the trial judge's constrained view of the law is inconsistent with the plain language and purpose of Title [9] and should be reversed."  We disagree.

In a Title 9 action, the admissibility of evidence is governed by statute, court rules, and the rules of evidence.  N.J.S.A. 9:6-8.46(b) provides that only "competent, material and relevant" evidence may be admitted in such actions.  Here, because the complaint did not allege medical or educational neglect, the judge excluded the preferred records based on relevance.

In reviewing a Family Part judge's evidentiary ruling, we consider it for an abuse of discretion.  N.J. Div. of Child Prot. & Permanency v. N.T., 445 N.J. Super 478, 492 (App. Div. 2016).  We reverse discretionary determinations, as with all rulings on the admissibility of evidence, only "when the trial judge's ruling was 'so wide of the mark that a manifest denial of justice resulted.'"  N.J. Div. of Youth & Family Servs. v. M.G., 427 N.J. Super 154, 172 (App. Div. 2012) (quoting State v. Carter, 91 N.J. 86, 106 (1982)).  Applying this standard to the circumstances here, we do not discern any abuse of the trial judge's

discretion because the Division failed to assert, as the judge found, any claims related to the documents.

The judge properly excluded the evidence because Terry was not on notice of the claims such evidence was intended to substantiate. A defendant in a Title 9 action is entitled to receive notice of the facts upon which the Division relies in asserting a claim of abuse or neglect in order to ensure that the defendant has an opportunity to meet and rebut proofs of the fact-finding hearing. See N.J. Div. of Youth & Family Servs. v. P.C., 439 N.J. Super 404, 414-15 (App. Div. 2015); N.J. Div. of Youth & Family Servs. v. J.Y., 352 N.J. Super. 245, 265 (App. Div. 2002). At a minimum, "[t]he complaint must adequately notify a defendant of all charges," P.C., 439 N.J. Super. at 413 (citing N.J. Div. of Youth & Family Servs. v. P.W.R., 205 N.J. 17, 36-37 (2011)), and the defendant must be given "an adequate opportunity to prepare and respond," N.J. Div. of Youth & Family Servs. v. B.M., 413 N.J. Super. 118, 126 (App. Div. 2010) (quoting H.E.S. v. J.C.S., 175 N.J. 309, 321-22 (2003)). Because a "fact-finding hearing is a critical element of the abuse and neglect process," P.C., 439 N.J. Super. at 413, it must be conducted "with scrupulous adherence to procedural safeguards," ibid. (quoting N.J. Div. of Youth & Family Servs. v. G.M., 198 N.J. 382, 401 (2009)). The Division's failure to notify a defendant that a trial would be based

upon allegations of educational or medical neglect "cannot be found to be harmless error."  B.M., 413 N.J. Super. at 127.

That does not mean a court cannot allow the evidence to go beyond that which is set forth in the complaint.  "That reality is not inconsistent with affording defendants the protections of due process to which they are entitled."  J.D. v. M.D.F., 207 N.J. 458, 479 (2011) (addressing the introduction of evidence of prior acts of domestic violence that were not included in a complaint).  However, a court must recognize that if it allows expansion of the allegations in the complaint, "it has permitted an amendment to the complaint and must proceed accordingly."  Id. at 479-80.  In a Title 9 action, "if the proof does not conform to the specific allegations of the complaint, the court may amend the allegations to conform to the proof; provided, however, that in such case the [defendant] shall be given reasonable time to prepare to answer the amended allegations."  N.J.S.A. 9:6-8.50(b).

A court allowing an amendment must consider whether the expansion prejudiced the defendant and whether an adjournment or other remedy is warranted.

> To be sure, some defendants will know full well the history that plaintiff recites and some parties will be well-prepared regardless of whether the testimony technically expands upon the allegations of the

complaint. Others, however, will not, and in all cases the trial court must ensure that defendant is afforded an adequate opportunity to be apprised of those allegations and to prepare.
[J.D., 207 N.J. at 480.]

Here, the Division's complaint did not assert either educational or medical neglect as the underlying basis for its filing. Although in its recitation of its history of involvement with Terry, it noted past allegations of educational neglect, there was nothing in the complaint to give Terry notice that her conduct at the time of the complaint's filing included those claims. Moreover, when the Division sought to introduce the records to support a new claim of abuse and neglect, it did not seek to amend its complaint at that time. Nor did it seek amendment later, after the judge ruled the records were inadmissible.

The fact that the judge addressed issues involving one child's asthma and her not attending school because of her condition did not change the contents of the complaint. Nor, as argued by the Division, did the Division's letter, transmitting evidence to both Terry and the Law Guardian and including a statement that the Division would be relying upon Terry's past history, give notice to Terry that the Division was asserting medical or educational neglect of her four young children. Under these circumstances, the judge did not abuse her discretion.

We turn our attention to the Division's contention that the judge's finding of no abuse or neglect was legally incorrect, considering her factual findings. We disagree.

Our review of a Family Part judge's findings is limited. We "defer to the factual findings of the trial court," N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008), in recognition of the "family courts' special jurisdiction and expertise in family matters," N.J. Div. of Youth & Family Servs. v. M.C. III, 201 N.J. 328, 343 (2010) (quoting Cesare v. Cesare, 154 N.J. 394, 413 (1998)). It is "[o]nly when the trial court's conclusions are so 'clearly mistaken' or 'wide of the mark,'" E.P., 196 N.J. at 104 (quoting N.J. Div. of Youth & Family Servs. v. G.L., 191 N.J. 596, 605 (2007)), that we will intervene and make our own findings "to ensure that there is not a denial of justice," ibid.

However, "[a] trial court's interpretation of the law and the legal conclusions that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995). The court's interpretation of the law or its legal conclusions are reviewed de novo. State ex rel. A.B., 219 N.J. 542, 554-55 (2014).

The Division asserts that the trial judge's interpretation of G.D. was incorrect. According to the Division, rather than analyzing the totality of the

circumstances in order to determine whether the situation represented an imminent danger to the children's physical condition and that Terry acted without regard for the potentially serious consequences, the trial judge found that the dirty home could not satisfy the definition of abuse or neglect under G.D.

In G.D. we reversed a trial judge's finding of abuse or neglect that was based in part upon the conditions of the home.  There, we held that a finding of abuse or neglect could not be based only upon the conditions of a home caused by poverty.  We stated the following:

> Wholly apart from the judge's articulation of his understanding of the statutory standard, it is clear from an examination of his findings and the emphasis in his opinion that he misconceived the nature and basis for the proceeding.  First, he emphasized the unacceptability of substandard, dirty and inadequate sleeping conditions.  While they may be unfortunate incidents of poverty, they do not establish child neglect or abuse.  Adoption of such facts as a basis for a finding of child neglect or abuse might result in mass transfers of children from ghettos and disadvantaged areas into more luxurious living accommodations but with resultant destruction of the natural parental bond.  This clearly was not the design of the statute nor the intent of the legislature.
>
> [G.D., 146 N.J. Super. at 430-31.]

As we recognized in G.D., "[i]t is well-settled that poverty alone is not a basis for a finding of abuse or neglect." N.J. Div. of Child Prot. & Permanency v. L.W., 435 N.J. Super. 189, 195 (App. Div. 2014). Our holding did not indicate that abuse or neglect cannot be found when such conditions are not the result of poverty, but rather were intentionally caused by a parent or guardian or the result of their gross negligence as contemplated under Title 9.

Where there is no proof of actual harm to a child, the Division can meet its burden by proving that the parent, through conduct that amounts to gross negligence, has created a substantial risk of harm to the child. "[A] failure to provide for a child's needs, when a parent is capable of doing so, can support actionable neglect where a child's condition has been demonstrated to be impaired or in imminent danger of being impaired." P.W.R., 205 N.J. at 35.

A failure to provide the "minimum degree of care," N.J.S.A. 9:6-8.21(c)(4), that a parent must provide to their child does not refer to merely negligent conduct, but "refers to conduct that is grossly or wantonly negligent, but not necessarily intentional," N.J. Div. of Youth & Family Servs. v. T.B., 207 N.J. 294, 300 (2011) (quoting G.S. v. N.J. Div. of Youth & Family Servs., 157 N.J. 161, 178 (1999)). "Conduct is considered willful or wanton if done with the knowledge that injury is likely to, or probably will, result," G.S., 157 N.J. at

19                                                          A-6041-17T3

178, and can apply to situations ranging from "slight inadvertence to malicious purpose to inflict injury," ibid. (quoting McLaughlin v. Rova Farms, Inc., 56 N.J. 288, 305 (1970)).

The essence of gross or wanton negligence is that it "implies that a person has acted with reckless disregard for the safety of others." Id. at 179. While gross negligence requires "an indifference to [the] consequences," Banks v. Korman Assocs., 218 N.J. Super 370, 373 (App. Div. 1987) (quoting State v. Gooze, 14 N.J. Super. 277, 282 (App. Div. 1951)), a parent's actual intent to cause harm is not necessary, G.S., 157 N.J. at 179. However, if the act or omission is intentionally done, "whether the actor actually recognizes the highly dangerous character of [his or] her conduct is irrelevant," and "[k]nowledge will be imputed to the actor." Id. at 178. Such knowledge is imputed "[w]here an ordinary reasonable person would understand that a situation poses dangerous risks and acts without regard for the potentially serious consequences." Id. at 179.

The evaluation of a parent's conduct for abuse or neglect should not be determined by the risk the parent poses to the child at the time of the fact-finding hearing. See N.J. Div. of Child Prot. & Permanency v. E.D.-O., 223 N.J. 166, 170 (2015). Rather, the analysis should focus on the events up through the time

of the conduct.  See ibid.  A trial court's focus on the risk that a parent's conduct poses to their child, at the time of the fact-finding hearing, "has the obvious potential to overlook [earlier] conduct, even aberrational conduct, that had the clear capacity to produce a catastrophic result.  Such an approach contravenes the legislative determination that child protective services and a court may intervene before a child experiences actual harm."  Id. at 189.  A trial court may consider, for limited purposes, the risk a parent poses at the time of the fact-finding hearing, but only in the context of determining future services and the disposition of the children, not for making the abuse or neglect determination itself.  Ibid.

Here, although there was no dispute about the uncleanliness of the home, the trial judge found that shortly after the time of the filing of the complaint, the school reported that some of the children were "clean" and "well-groomed," the rent and utilities were paid, and Terry had cooperated with the services provided by the Division that helped her improve the home's poor conditions.

The judge also found that Terry's behavior did not give rise to an act of gross negligence nor was it intentional behavior that created an imminent risk of harm to the children.  The judge reached her conclusions after conducting a review of the totality of the circumstance that included Terry's attempt to parent

all of her children, including the two cognitively disabled adult children in her care, using funds derived through government benefits.

The judge's findings were supported by the evidence. Under our deferential standard of review, we are bound by them. And, her determination that under the circumstances, our holding in G.D. prevented a finding of abuse or neglect was legally correct. There was an absence of any evidence of gross negligence, despite the fact that minimally, some of the conditions of the home could have been remedied with physical effort, that is, self-cleaning the home and sanitizing it as required.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-6041-17T3