**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3440-16T3
          A-3441-16T3

NEW JERSEY DIVISION OF CHILD
PROTECTION AND PERMANENCY,

    Plaintiff-Respondent,

v.

C.H. and L.H.,

    Defendants-Appellants.

─────────────────────────────

IN THE MATTER OF K.H. and S.H,

    Minors.

─────────────────────────────

Argued May 14, 2018 — Decided June 8, 2018

Before Judges Rose and Firko.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FN-07-0444-15.

Carol N. Willner, Designated Counsel, argued the cause for appellant C.H. (Joseph E. Krakora, Public Defender, attorney; Carol N. Willner, on the brief).

Clara S. Licata, Designated Counsel, argued the cause for appellant L.H. (Joseph E. Krakora, Public Defender, attorney; Clara S. Licata, on the brief).

Diane L. Scott, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Jason W. Rockwell, Assistant Attorney General, of counsel; Diane L. Scott, on the brief).

Danielle Ruiz, Designated Counsel, argued the cause for minors (Joseph E. Krakora, Public Defender, Law Guardian, attorney; Danielle Ruiz, on the brief).

PER CURIAM

In these consolidated appeals, L.H. ("mother") and C.H. ("father") (collectively, "defendants") appeal from an August 19, 2015 Family Part order, finding they abused or neglected their daughters, K.H. and S.H.,[1] by failing to ensure they attended school regularly. The fact-finding order was perfected for appeal by a March 8, 2017 order terminating the litigation. We affirm.

I.

We derive the salient facts from the record developed at the fact-finding hearing. Defendants are the biological parents of K.H., born in April 2001, and S.H., born in August 2005. Defendants' history with plaintiff Division of Child Protection and Permanency ("Division") began in January 2003, following a

---

[1] We use initials to protect the identity of those involved and to preserve the confidentiality of these proceedings. R. 1:38-3(d)(12).

2

A-3440-16T3

referral for inadequate supervision. Father was substantiated for neglect. In February 2010, the Division again substantiated neglect, following a referral that father had assaulted mother and was admitted to a psychiatric ward. Apparently, K.H., then nine years old, and S.H., then five years old, had been left home alone.

In October 2014, the Division received a referral that S.H. had "been absent for [thirteen] of the [eighteen] school days in October 2014." Three months later, the Division closed the case, finding the children were healthy and "safe in the care of their natural parents."

Pertinent to this appeal, on February 26, 2015, the Division received a referral that S.H. was absent from school for fourteen days between October 2014 and January 2015. Because S.H. was unable to read at her grade level, she had been placed on home instruction, but mother interfered with the sessions, at times refusing to allow the tutor to enter the family's residence.

On March 4, 2015, after three previous attempts, Division caseworker Rachel DuBois met with the family at their home. Mother initially refused to speak with DuBois, became agitated, and left the room. The caseworker spoke with father who indicated his wife was "crazy," and exhibiting "strange" behavior. DuBois instructed father to ensure both girls attended school regularly. Mother

A-3440-16T3

later returned and inquired about the purpose of the caseworker's visit. Unable to answer many of the questions posed by DuBois, mother "appeared to be confused or lacked insight."

DuBois spoke with S.H., who could not recall the last time she attended school, but "appeared to be clean and . . . dressed appropriately." K.H. refused to speak with the caseworker, but presented as "clean and healthy." Father promised DuBois he would take S.H. for a school services evaluation.

DuBois returned to the home in April 2015 because K.H. had not attended school after father had taken S.H. for her evaluation. Between January and April 2015, K.H. missed thirty-four of seventy-five school days, and S.H. only received five days of home instruction. The parents' reasons for their daughters' absences were not plausible.

Specifically, mother claimed she kept K.H. home from school because "she does [not] like people interviewing her kids." Mother also told the caseworker she did not permit S.H.'s instructor to enter the home because mother was sick from January through April. Father stated he was "afraid of [mother]" and unable "to enforce any rules." The children had not seen a physician for more than a year. The caseworker expressed concerns about the mental health of both parents.

Accordingly, on April 23, 2015, the Division filed a complaint and order to show cause for care and supervision of K.H. and S.H. The judge granted the Division's application and ordered defendants to comply with mental health evaluations and services provided by the Division, and to ensure that their daughters attend school.

On April 27, 2015, defendants and K.H. met with Division psychologist Alison Strasser Winston, Ph.D. Dr. Winston did not testify at the hearing, but the parties stipulated to the admission of her report, subject to redaction of any diagnoses. K.H. told Dr. Winston that mother was not mentally stable and "needs help [but] she keeps refusing." Mother presented as paranoid and denied having mental health issues. Dr. Winston concluded mother had "not been proactive in ensuring that her children attend school, nor d[id] she seem overly concerned about . . . the impact of their poor attendance." Father told Dr. Winston he had been diagnosed with schizophrenia in 2009, which remained unaddressed. Dr. Winston found father was passive and unassertive.

On April 28, 2015, S.H. and K.H. did not attend school. Based on Dr. Winston's evaluation and the children's absences from

school, the Division executed an emergency Dodd removal.[2]  The trial court upheld the removal, finding defendants had failed to comply with its April 23, 2015 order.  Following the children's removal, their attendance improved and they were "thriving."

At the August 19, 2015 fact-finding hearing, the Division presented DuBois as its sole witness.  Certain documents, including Division reports and assessments, Dr. Winston's psychological evaluation, police reports and the children's school records were admitted into evidence.  Defendants did not testify or present any witnesses.

In an oral decision, the judge determined the Division "prove[d] by a preponderance of the evidence that both . . . mother and father failed to provide a minimum degree of care in supplying the children with their education."  In doing so, the judge found:

> [T]here is nothing in the evidence, . . . to mitigate that or to in any way, diminish the level of proofs that the Division provided to the [c]ourt by way of the oral testimony and physical evidence that would in any way . . . prevent this [c]ourt from weighing the Division's evidence and concluding that the Division proved the elements that are required that the parents neglected the education of their children as required by the statute.

_____

[2] A Dodd removal is an emergent removal of a minor without a court order pursuant to N.J.S.A. 9:6-8.21 to -8.82, known as the Dodd Act.  N.J. Div. of Youth & Family Servs. v. P.W.R., 205 N.J. 17, 26 n.11 (2011).

The judge also found the testimony of DuBois and the documentary evidence credible. A memorializing order was entered on the same date, and this appeal followed.

On appeal, defendants do not dispute their daughters' excessive absences from school. Further, mother does not dispute Dr. Winston's determination that the girls were emotionally impaired by her mental illness because they believed mother needed them to stay at home with her. Rather, defendants contend they do not have the mental capacity to act recklessly or with gross negligence in failing to provide an education for K.H. and S.H. The Division and law guardian urge us to affirm the court's order.

## II.

Our task as an appellate court is to determine whether the decision of the Family Court is supported by substantial credible evidence in the record and is consistent with applicable law. Cesare v. Cesare, 154 N.J. 394, 411-12 (1998). We owe particular deference to "the family courts' special jurisdiction and expertise . . . ." Id. at 413. Unless the judge's factual findings are "so wide of the mark that a mistake must have been made[,]" they should not be disturbed, even if we would not have made the same decision had we heard the case in the first instance. N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007)

A-3440-16T3

(quoting <u>C.B. Snyder Realty, Inc. v. BMW of N. Am., Inc.</u>, 233 N.J. Super. 65, 69 (App. Div. 1989)). "It is not our place to second-guess or substitute our judgment for that of the family court, provided that the record contains substantial and credible evidence to support" the judge's decision. <u>N.J. Div. of Youth & Family Servs. v. F.M.</u>, 211 N.J. 420, 448-49 (2012) (citation omitted).

### A.

Through the admission of "competent, material[,] and relevant evidence," the Division must prove by a preponderance of the evidence that the child was abused or neglected. N.J.S.A. 9:6-8.46(b). In pertinent part, N.J.S.A. 9:6-8.21(c)(4)(a) defines an "abused or neglected child" as a child under eighteen years of age:

> whose physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired as the result of the failure of his parent . . . to exercise a minimum degree of care (a) in supplying the child with adequate . . . education . . . though financially able to do so or though offered financial or other reasonable means to do so . . . .

In New Jersey, parents are required to ensure their children either regularly attend the public schools of the district in which they reside, or receive instruction equivalent to that provided

in the public schools. N.J.S.A. 18A:38-25. Attendance of a school age child is compulsory. <u>Joye v. Hunterdon Cent. Reg'l High Sch. Bd. of Educ.</u>, 176 N.J. 568, 641 (2003). Indeed, a parent who fails to comply with the attendance requirements "shall be deemed to be a disorderly person . . . ." N.J.S.A. 18A:38-31. "The reference to education contained in N.J.S.A. 9:6-8.21(c)(4)(a) concerns parental encouragement to truancy of a school age child, or other interference with normal educative processes." <u>Doe v. Downey</u>, 74 N.J. 196, 199 (1977) (quoting <u>Doe v. G.D</u>, 146 N.J. Super. 419, 431 (App. Div. 1976)).

Applying these standards, we affirm the trial court's undisputed finding of educational neglect. Although the judge did not specifically find K.H. and C.H. suffered actual harm as a result of defendants' neglect, a court "need not wait to act until a child is actually irreparably impaired by parental inattention or neglect." <u>N.J. Dep't of Children & Families, Div. of Youth & Families Servs. v. A.L.</u>, 213 N.J. 1, 23 (2013) (quoting <u>In re Guardianship of D.M.H.</u>, 161 N.J. 365, 383 (1999)). "In the absence of actual harm, a finding of abuse and neglect can be based on proof of imminent danger and substantial risk of harm." <u>Ibid.</u>; <u>see</u> N.J.S.A. 9:6-8.21(c)(4)(b). That is clearly the case here

because the poor attendance records of both K.H. and S.H. placed them at serious risk of suffering an educational deficit.

Instead, defendants argue, for the first time on appeal, that their mental illness precludes a finding of educational neglect. Considering this argument pursuant to the "plain error" standard, we are satisfied it was not "of such a nature as to have been clearly capable of producing an unjust result." R. 2:10-2.

In particular, the existence of a mental illness, whether known or unknown, does not preclude a finding of child abuse or neglect under Title 9. The language in N.J.S.A. 9:6-8.21(c)(4) concerning failure "to exercise a minimum degree of care" has been interpreted by our Supreme Court as referring to "conduct that is grossly or wantonly negligent, but not necessarily intentional" and "reckless disregard for the safety of others . . . ." Dep't of Children & Families, N.J. Div. of Youth & Family Servs. v. T.B., 207 N.J. 294, 305-06 (2011) (quoting G.S. v. Dep't of Human Servs., 157 N.J. 161, 177-79 (1999)); see also N.J. Div. of Youth & Family Servs. v. S.N.W., 428 N.J. Super. 247, 254-56 (App. Div. 2012).

Although it is clear that the phrase implies more than simple negligence, it can apply to situations ranging from "slight inadvertence to malicious purpose to inflict injury." McLaughlin

10                                                              A-3440-16T3

v. Rova Farms, Inc., 56 N.J. 288, 305 (1970). "Where an ordinary reasonable person would understand that a situation poses dangerous risks and acts without regard for the potentially serious consequences, the law holds him or her responsible for the injuries" caused. G.S., 157 N.J. at 179 (citing McLaughlin, 56 N.J. at 305 and Fielder v. Stonack, 141 N.J. 101, 123 (1995)).

Conduct is considered willful or wanton if done with the knowledge that injury is likely to, or probably will, result. McLaughlin, 56 N.J. at 305. Because risks that are recklessly incurred are not considered unforeseen perils or accidents in the eyes of the law, actions taken with reckless disregard for the consequences also may be wanton or willful. Ibid.; Egan v. Erie R.R. Co., 29 N.J. 243, 254-55 (1959). As long as the act or omission that causes injury is done intentionally, whether the actor actually recognizes the highly dangerous character of his or her conduct is irrelevant. See McLaughlin, 56 N.J. at 305. "Knowledge will be imputed to the actor." G.S., 157 N.J. at 178.

We reject defendants' arguments that they lack sufficient mental capacity to understand failing to educate K.H. and S.H. posed a serious risk to their well-being. The record reflects both parents expressed awareness that their children were required to attend school, as evidenced by their conversations with school

11

officials, DuBois, and Dr. Winston. Further, defendants did not present any evidence at the hearing that they lacked the capacity to understand their educational responsibility to their children. See G.S., 157 N.J. at 177 (recognizing "Title 9's primary concern is the protection of children, not the culpability of parental conduct").

B.

We next address defendants' claims that their respective attorneys were ineffective primarily for failing to present evidence that they lacked the mental capacity to understand they exposed their children to harm. "[A] defendant has a right to [the effective assistance of] counsel when a complaint is filed against him or her charging abuse and neglect and threatening the individual's parental rights." N.J. Div. of Youth & Family Servs. v. B.H., 391 N.J. Super. 322, 345 (App. Div. 2007) (citing N.J.S.A. 9:6-8.43(a)). In determining whether that right has been violated, we apply the test "as set forth . . . in Strickland [v. Washington, 466 U.S. 668 (1984)]." Id. at 346; see N.J. Div. of Youth & Family Servs. v. B.R., 192 N.J. 301, 308-09 (2007) (adopting the Strickland test in parental termination cases). Specifically, "(1) counsel's performance must be objectively deficient i.e., it must fall outside the broad range of professionally acceptable

12

performance; and (2) counsel's deficient performance must prejudice the defense i.e., there must be 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" B.R., 192 N.J. at 307 (quoting Strickland, 466 U.S. at 694).

To establish the elements of an ineffective-assistance-of-counsel claim,

> appellate counsel must provide a detailed exposition of how the trial lawyer fell short and a statement regarding why the result would have been different had the lawyer's performance not been deficient. That will include the requirement of an evidentiary proffer in appropriate cases. For example, if the failure to produce expert or lay witnesses is claimed, appellant will be required to supply certifications from such witnesses regarding the substance of the omitted evidence along with arguments regarding its relevance.
>
> [Id. at 311.]

Here, defendants failed to furnish certifications from any expert regarding their respective mental conditions. Thus, defendants have failed to establish the elements of an ineffective-assistance-of-counsel claim. See N.J. Div. of Youth & Family Servs. v. N.S., 412 N.J. Super. 593, 643 (App. Div. 2010) (rejecting the defendant's ineffective-assistance-of-counsel claim in part because he "fail[ed] to provide certifications

13

. . . relating the substance of the omitted testimony" from the expert witnesses his trial counsel never procured). Defendants' remaining ineffective-assistance-of-counsel arguments lack sufficient merit to warrant further discussion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3440-16T3