# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2781-21

NEW JERSEY DIVISION OF
CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

D.S.H. (Deceased) and T.C.,

     Defendants,

and

R.H.,

     Defendant-Appellant,

_____

IN THE MATTER OF R.H. and C.C.,
minors.

_____

Submitted November 14, 2023 – Decided December 5, 2023

Before Judges Rose and Smith.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Court, Essex County, Docket No. FN-07-0129-19.

Joseph E. Krakora, Public Defender, attorney for appellant (Laura M. Kalik, Designated Counsel, on the briefs).

Matthew J. Platkin, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Nicholas Joseph Dolinsky, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor R.H. (Meredith Alexis Pollock, Deputy Public Defender, of counsel; David Ben Valentin, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

In this Title Nine matter, defendant R.H. (Ron), appeals from a March 29, 2022 Family Part order terminating protective services litigation following a February 22, 2019 fact-finding determination that he educationally neglected his then fourteen-year-old daughter, R.H. (Rachel), by failing to ensure she was enrolled in school.[1] Because there was insufficient evidence to support the court's legal conclusion, we reverse.

---

[1] Consistent with the parties' briefs, we use initials and pseudonyms to protect their privacy. See R. 1:38-12(d)(12).

I.

We summarize the facts from the limited record developed at the brief fact-finding hearing. Rachel is the biological child of D.S.H (Dee) and T.C.; Ron is Rachel's legal father. The family has a history with the Division of Child Protection and Permanency since 2006.[2]

Pertinent to this appeal, on October 14, 2018, the Division received a referral from local police that Dee had reported Rachel missing and she was located at a friend's home in East Orange. Rachel told police Ron had custody of her but she had been staying with Dee for the past month because Ron said he "did not want her anymore." Rachel said "she [wa]s not supposed to be living with her mother because D[ee] uses drugs and used to beat [her]." Rachel further disclosed Ron "hits her when his girlfriend is around" and "last hit her a month ago." No marks or bruises were observed on Rachel's body. Police contacted Ron, who said he would respond in two hours.

The next day, Division investigative worker, Melissa Montalvo, attempted to call Ron but "[a] man with an accent" hung up when Montalvo identified

_____

[2] See N.J. Div. of Youth & Fam. Servs. v. D.S.H., 425 N.J. Super. 228, 243-44 (App. Div. 2012) (recognizing Ron as Rachel's legal father, thereby reversing a Family Part judgment that terminated D.S.H.'s parental rights to Rachel). D.S.H. died in July 2021; D.S.H., T.C., and their biological daughter, C.C. are not parties to this appeal.

A-2781-21

herself. On October 16, 2018, the Division contacted Ron and advised that a court hearing was scheduled for the following day.

On October 17, 2018, Montalvo interviewed Ron. Visibly upset, Ron denied he left Rachel with Dee. Ron explained he left Rachel in the care of Dee's sister, M.S. (Martha), four weeks prior to the referral, with the plan that Rachel "stay with Martha indefinitely since he did not have an established home at the moment." Ron acknowledged that since May 2018, "he ha[d] been living out of hotels." He claimed he gave Martha money weekly while she cared for Rachel. According to Ron, "R[achel] likes to make up stories."

Ron told Montalvo "he tried all he could" to reenroll Rachel in Orange Preparatory Academy but she "ha[d] a big mouth and t[old] people we don't live in Orange." He said he attempted to provide the school with proof of residence but "the school refused to believe him because R[achel] kept 'running her mouth.'" Directing Ron's attention to Rachel's last day of school on September 27, 2018, and October 4, 2018 when she was "officially unenrolled" by the school, Montalvo asked "what happened the weeks after her last day of school." Ron responded he "continued to go to the school to convince them to reenroll R[achel] but they wouldn't." Ron claimed he would have enrolled Rachel in the

4

East Orange school district the following Monday but the Division removed the child from his care.

The Division also interviewed Dee and Martha. Dee claimed Ron dropped off Rachel at her home in June 2018, never advised when he would return, and had not been back since that day. Martha alleged Rachel had stayed at her home, her mother's home, and her daughter's home. Martha said Rachel was not attending school. She further stated Ron "and his girlfriend lost their apartment in May/June of 2018 and have been living from hotel to hotel in South Jersey."

Based on its investigation, the Division made findings that the allegations against Ron for abandonment and educational neglect were "established." The Division also found the allegations against Ron for physical abuse were "not established."

The fact-finding hearing was held during the afternoon of February 22, 2019. Montalvo was the sole witness. Two documents were admitted into evidence – the Division's screening summary and investigative summary – subject to the parties' agreement that the court would not consider "embedded," third-party hearsay contained in the summary reports.

Montalvo's testimony was consistent with the Division's summary reports outlined above. Regarding Ron's efforts to reenroll Rachel in school, Montalvo

elaborated: "He said that he actually did go to the school and tried to provide them with a copy of his previous . . . tenant/landlord contract he had filled out for the last place they lived." Montalvo "contact[ed] the school to verify this information" but "[a]ccording to the school," Ron did not do so. Montalvo did not disclose with whom she spoke at the school. Nor was any information concerning her contact with the school memorialized in the Division's summary reports. Notably, Rachel's attendance records were not moved into evidence.

On cross-examination by the law guardian, Montalvo explained Ron said he attempted "to enroll [Rachel] in the East Orange School District" because Martha lived in East Orange. However, Ron neither told Montalvo where he was living at the time nor "that he had checked up on R[achel]." When questioned by Ron's counsel, Montalvo acknowledged Ron mentioned "he did not have secure housing" having "lost his housing . . . sometime in the beginning of the summer." Thereafter, Ron "had been living in hotels."

Immediately following closing arguments, the judge issued a decision from the bench citing the governing legal principles. Crediting Montalvo's testimony, the judge found

> the only statements of R[achel] that are corroborated by
> anything other than inadmissible hearsay is that [Ron]
> lost his apartment in May 2018, they had been living in
> hotels, . . . she had not been to school for the three

6

prior weeks, and that he had dropped her off somewhere weeks prior. All other statements of R[achel] are uncorroborated and, while admissible, cannot be relied upon by this court for any finding of abuse or neglect.

The court also found the statements of Dee and Martha inadmissible as "third-party hearsay."

Based on the admissible evidence adduced at the hearing, the court concluded the Division proved educational neglect but failed to prove abandonment. According to the court:

> The evidence establishe[d] that [Ron] left R[achel] with [Martha], to whom he provided funds weekly. His attempts to have R[achel] enrolled in [the] East Orange [School] District because that's where [Martha] lives lend[] credibility to this evidence. It further establishes that he attempted to have R[achel] returned to Orange Prep Academy but could not because they no longer lived in Orange.
>
> . . . .
>
> [Ron] acknowledged that R[achel] had not been to school and his attempts to . . . ensure that she was enrolled or that whomever he left her with had what was necessary in order to ensure she could be enrolled were feeble at best. There were . . . many other things that he could have done to ensure that she was enrolled, and he failed to do so.

7

Ordinarily, we defer to the Family Court's factual findings, as long as they are supported by substantial credible evidence in the record. N.J. Div. of Youth & Fam. Servs. v. L.L., 201 N.J. 210, 226 (2010); N.J. Div. of Youth & Fam. Servs. v. M.M., 189 N.J. 261, 279 (2007). However, we will not hesitate to set aside a ruling that is "so wide of the mark that a mistake must have been made." M.M., 189 N.J. at 279 (quoting C.B. Snyder Realty Inc. v. BMW of N. Am., Inc., 233 N.J. Super. 65, 69 (App. Div. 1989)). "Where the issue to be decided is an 'alleged error in the trial judge's evaluation of the underlying facts and the implications to be drawn therefrom,' we expand the scope of our review." N.J. Div. of Youth & Fam. Servs. v. G.L., 191 N.J. 596, 605 (2007) (quoting In re Guardianship of J.T., 269 N.J. Super. 172, 188-89 (App. Div. 1993)). We also accord no deference to the trial court's legal conclusions, which we review de novo. State v. Smith, 212 N.J. 365, 387 (2012); see also Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

Through the admission of "competent, material[,] and relevant evidence," in a Title Nine action, the Division must prove by a preponderance of the evidence that the child was abused or neglected. N.J.S.A. 9:6-8.46(b); see also

N.J. Div. of Youth & Fam. Servs. v. P.W.R., 205 N.J. 17, 32 (2011). In pertinent part, N.J.S.A. 9:6-8.21(c)(4)(a) defines an "abused or neglected child" as:

> a child whose physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired as the result of the failure of [the child's] parent . . . to exercise a minimum degree of care . . . in supplying the child with adequate . . . education, . . . though financially able to do so or though offered financial or other reasonable means to do so . . . .

The statute does not require that a child experience actual harm. N.J. Dep't of Child. & Fams. v. E.D.-O., 223 N.J. 166, 178 (2015). However, "in a case where there is no such proof, the critical focus is on evidence of imminent danger or substantial risk of harm." N.J. Dep't of Children & Families v. A.L., 213 N.J. 1, 22 (2013).

Further, "[t]o find abuse or neglect, the parent must 'fail[] . . . to exercise a minimum degree of care.'" E.D.-O., 223 N.J. at 179 (alteration in original) (quoting N.J.S.A. 9:6-8.21(c)(4)(b)). A "minimum degree of care" encompasses "conduct that is grossly or wantonly negligent, but not necessarily intentional." Ibid. Wanton negligence is conduct that is engaged in with the parent's knowledge that injury is likely to result. Ibid. Mere negligence does not trigger the statute. Dep't of Child. & Fams., Div. of Youth & Fam. Servs. v. T.B., 207

9

N.J. 294, 306-07 (2011); G.S. v. Dep't of Human Servs. Div. of Youth & Fam. Servs., 157 N.J. 161, 172-73 (1999).

"[W]hether a parent's conduct is negligent or grossly negligent requires an evaluation of the totality of the circumstances." E.D.-O., 223 N.J. at 170-71. In undertaking this analysis, our Supreme Court has warned trial and appellate courts "must avoid resort to categorical conclusions." Id. at 180. Thus, whether a parent failed to exercise a minimum degree of care involves a "fact-sensitive" analysis "and must be resolved on a case-by-case basis." Id. at 192.

In New Jersey, parents are required to ensure their children either regularly attend the public schools of the district in which they reside or receive instruction equivalent to that provided in the public schools. N.J.S.A. 18A:38-25; see also Joye v. Hunterdon Cent. Reg'l High Sch. Bd. of Educ., 176 N.J. 568, 641 (2003) (holding attendance of a school-age child is compulsory). A parent who fails to comply with the attendance requirements "shall be deemed to be a disorderly person." N.J.S.A. 18A:38-31.

Our Supreme Court has linked truancy to child neglect in finding "[t]he reference to education contained in N.J.S.A. 9:6-8.21(c)(4)(a) concerns parental encouragement to truancy of a school age child, or other interference with normal educative processes." Doe v. Downey, 74 N.J. 196, 199 (1977) (quoting

Doe v. G.D., 146 N.J. Super. 419, 431 (App. Div. 1976)) (holding a preschool-age child's lack of education is not educational neglect under N.J.S.A. 9:6-8.21); N.J. Div. of Youth & Fam. Servs. v. M.W., 398 N.J. Super. 266, 285-86 (App. Div. 2008) (noting a parent had harmed her children through educational neglect, among other forms of abuse, because she had left them with her cousin who locked them in a basement for an extended period of time and deprived them of beds, food, a toilet, and the physical ability to attend school).

Pursuant to N.J.S.A. 9:6-8.46(a)(4), "previous statements made by the child relating to any allegations of abuse or neglect shall be admissible in evidence; provided, however, that no such statement, if uncorroborated, shall be sufficient to make a fact finding of abuse or neglect." See also N.J. Div. of Child Prot. & Permanency v. J.A., 436 N.J. Super. 61, 66-67 (App. Div. 2014) (quoting N.J.S.A. 9:6-8.46(a)(4)). "Stated another way, 'a child's hearsay statement may be admitted into evidence, but may not be the sole basis for a finding of abuse or neglect.'" Id. at 67 (quoting P.W.R., 205 N.J. at 33). Corroborative evidence therefore is required. Ibid. "The most effective types of corroborative evidence may be eyewitness testimony, a confession, an admission or medical or scientific evidence." N.J. Div. of Youth & Fam. Servs. v. L.A., 357 N.J. Super. 155, 166 (App. Div. 2003).

A-2781-21

III.

With these legal principles in view, we turn to the arguments raised on appeal. Ron challenges the sufficiency of the Division's evidence underpinning the trial court's finding of educational neglect. Ron argues the court failed to consider the totality of the circumstances, including his "impoverished condition and transient lifestyle." For example, Ron contends the Division failed "to assist [him] with housing or enrolling Rachel in school." Citing the Division's policy manual for determining and supporting allegations of abuse and neglect, Ron claims Rachel's twelve-day absence fell short of the one-month absence "without valid reasons" example of educational neglect. Ron further contends the Division failed to present competent evidence that "the education . . . Rachel had been receiving was 'inadequate,'" as required under N.J.S.A. 9:6-8.21(c)(4). Finally, Ron argues the court improperly relied on Montalvo's uncorroborated hearsay testimony.

The law guardian now joins Ron, urging us to reverse. Similar to Ron, the law guardian contends the trial court improperly relied on "inadequate information" to support the educational neglect finding, including Montalvo's testimony that she spoke with unidentified school personnel regarding Ron's efforts to reenroll Rachel. For the first time on appeal, the law guardian argues

the court failed to consider the responsibilities of public school districts to ensure that homeless children in New Jersey are provided with a thorough and efficient education. See generally N.J.S.A. 18A:7B-12.1; N.J.A.C. 6A:17-1.1 to -1.2, -2.3; see also 42 U.S.C. § 11431(1) (providing "[e]ach [s]tate educational agency shall ensure that each child of a homeless individual and each homeless youth has equal access to the same free, appropriate public education . . . as provided to other children and youths").

Having considered these arguments in view of the governing legal principles, we are persuaded the Division's proofs fell short under the totality of the circumstances presented in this case. The record is devoid of any competent evidence that Ron failed to exercise a minimum degree of care by educationally neglecting Rachel. Instead, as the trial court found, Ron: "lost his apartment in May 2018" and "was living in hotels with Rachel"; left Rachel in Martha's care; attempted to enroll Rachel in school in East Orange where Martha lived; and attempted to reenroll Rachel in school in Orange but he and Rachel no longer resided in that municipality. In view of those factual findings, the court found Ron's attempts to ensure Rachel attended school during her three-week absence "feeble at best." We disagree.

Initially, we recognize the court's educational neglect finding was based primarily on Rachel's statements as corroborated by Ron's admissions pursuant to N.J.S.A. 9:6-8.46(a)(4). Further, the court carefully parsed Rachel's uncorroborated statements in its decision rejecting the Division's abandonment allegation. We therefore discern no error in the admission of Rachel's statements concerning her school absences.

We part company, however, with the court's finding that Ron's attempts to comply with Rachel's school attendance requirements were insufficient. Those findings were implicitly based on Montalvo's discussions with school officials who were neither identified in the record nor disclosed in the Division's summary reports. Even if the school personnel had been identified, however, Montalvo's conversations with these individuals nonetheless were out of bounds pursuant to the parties' stipulation that the court would not consider "embedded" hearsay.

Moreover, although the parties do not dispute that Rachel had not attended school from at least September 27, 2018 to October 14, 2018, the Division failed to introduce into evidence Rachel's school records. Thus, the total number of absences is not specified in the record. Assuming, however, there were no school holidays within that three-week period, as Ron argues, the timeframe is

14

less that the one-month period set forth as an example of educational neglect in the Division's policy manual. Although it contends the manual's examples are not exhaustive, the Division failed to consider Ron's homelessness as a "valid reason[]," excusing Rachel's absence from school during that time frame.

We therefore cannot conclude on the record before us that the Division's proofs demonstrated Ron's conduct amounted to gross negligence. See T.B., 207 N.J. at 309. Because the evidence the Division presented was insufficient to establish abuse or neglect pursuant to N.J.S.A. 9:6-8.21(c)(4)(a), we reverse the trial court's decision and order the Division to remove the incident from defendant's existing entry in the Central Registry.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION